[Civ. No. 467. First Appellate District.—July 1, 1908.]

PETER A. BREEN, Appellant, v. G. M. ROY, Respondent.

ASSUMPSIT—VALUE OF SERVICES OF REAL ESTATE BROKERS—PREMATURE WITHDRAWAL OF CONTRACT—PROMISE—ERROR IN EXCLUDING EVIDENCE—DIRECTION OF VERDICT.—In an action of *indebitatus assumpsit* by the assignee of real estate brokers, the court erred in excluding all evidence to show that, before a written contract with them was prematurely withdrawn by the owner, plaintiff's assignors had performed services thereunder, and the reasonable value thereof, and that before such withdrawal the owner promised to pay them the agreed commission; and it was error to withdraw such matters from the jury, and to direct a verdict for the defendant.

ID.—FORM OF ACTION—PREVENTION OF PERFORMANCE—CONTRACT ADMISSIBLE.—The performance of the contract having been prevented by the defendant, the action was properly brought in the form of *indebitatus assumpsit*, and not directly upon the contract; though, as it is the basis upon which the cause of action arose, it is admissible in evidence in said action.

ID.—RIGHT OF RECOVERY—SERVICES AND EXPENDITURES IN GOOD FAITH—PROMISE IN CONSIDERATION OF WITHDRAWAL.—If the brokers performed services in good faith, or expended money to obtain a purchaser while the contract was in force, and the defendant, in view thereof, went to them before the time limited had expired, and promised to pay for those services, and for being permitted to withdraw the contract, and upon such promise the contract was withdrawn, there is no reason in law or in morals which would preclude a recovery.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Bert Schlesinger, for Appellant.

R. H. Countryman, for Respondent.

COOPER, P. J.—This action was brought to recover $350 for services alleged to have been rendered and performed by the assignors of plaintiff for defendant at his special instance

and request. The complaint alleges that defendant promised and agreed to pay to plaintiff's assignors the said sum of $350 for such services. The answer denies that the plaintiff's assignors ever rendered or performed any services for defendant at his special instance or request or otherwise, or that defendant ever promised to pay $350 or any other sum for any such services or for any services.

The case was tried before the court with a jury duly impaneled.

Plaintiff, in order to prove his case, introduced without objection an agreement in writing, signed by defendant, which is as follows:

"San Francisco, California, August 27, 1906.

"I hereby authorize Sullivan, Feder & Kahn exclusively for the term of five days from date to sell and enter into and sign a writing contract in my name and for me, for the sale and conveyance of the following described property: Situate in the City and County of San Francisco, State of California, to wit, on the north line of Geary street 141 3/12 feet east of Fillmore street 25 by 127 6/12 feet, with the improvements thereon in course of alteration; leased for five years from Oct. 1, 1906, at $300 per month. Cost of alterations to be paid by purchaser. And I agree to accept the sum of fourteen thousand dollars ($14,000.00) in U. S. gold coin, and I agree to pay Sullivan, Feder & Kahn 2½ per cent commission on the sale price thereof.          G. M. ROY."

Mr. Feder was called by plaintiff as a witness, and testified that on the twenty-ninth day of August, 1906, the defendant came into the office and asked that no further efforts be made to sell the property under the contract, and that defendant then and there said to witness: "Dan O'Callaghan has an offer for this property. He has a deposit of $500, and I believe that he will sell it, and therefore if he does sell it I will get $500 over and above what your price calls for." While this witness was on the stand and plaintiff's counsel was further examining him, the following took place:

"Q. After getting that contract, what did you do? A. I immediately proceeded to find a purchaser.

"Mr. Schlesinger: Q. Did you and members of the firm submit it to several prospective purchasers about town?

"Mr. Countryman: We object to that as leading.

"The Court: Sustained.

"Mr. Schlesinger: While this contract was in force did you have any talk with Mr. Roy, any further talk? A. I did.

"Mr. Schlesinger: May be the position we assume and my statements are not quite clear. Sullivan, Feder & Kahn made for the sale of this property a five days' contract. Roy went to them and said, 'I want to withdraw the property from you people; I will withdraw the property and pay you your commission.' That is our case.

"The Court: Nothing to it.

"Mr. Schlesinger: Now, I hope—I don't think that is proper to the plaintiff at all. Your honor is in the wrong on this proposition. We have a written contract in evidence, but you let it go. We sue for services.

"The Court: Why don't you bring a different action then?

"Mr. Schlesinger: We cannot sue upon the contracts.

"The Court: There is no use in talking to me upon a proposition of law like that. Gentlemen of the jury, I instruct you to bring in a verdict for the defendant.

"Mr. Schlesinger: I protest against the judgment going for the defendant. Will your honor allow us to submit offer of proofs?

"Mr. Countryman: We object to these offers of proofs, and ask for judgment for the defendant.

"Mr. Schlesinger: We have not closed our case.

"The Court: You don't have to. This gentleman has proved himself out of court. Take your exceptions if you wish.

"Mr. Schlesinger: We certainly do take an exception.

"The Court: Gentlemen of the jury, select a foreman. (Mr. P. H. Flood chosen as foreman.) Now, gentlemen of the jury, I will instruct you to bring in a verdict for the defendant."

The jury accordingly returned a verdict for the defendant upon which judgment was entered. This appeal is from the judgment.

The ruling of the court was to the effect that, although the plaintiff's assignors had a contract in writing authorizing them to sell the defendant's land, and agreeing to pay them a commission therefor, the plaintiff would not be allowed to prove that his assignors performed services for defendant

under the contract before it was withdrawn, nor to prove the reasonable value of such services, nor the agreement of the defendant to pay for the services. In this we are of opinion that the court was in error. The foundation of the plaintiff's claim was the written contract. Under that contract his assignors would have been entitled to recover commissions if they had found a purchaser ready, willing and able to pay the price named in the contract. If in good faith they performed services, or expended money in endeavoring to obtain a purchaser, while the contract was in force, and the defendant under such circumstances went to them before the time named in the contract had expired, and promised to pay for those services and being permitted to withdraw the contract, and upon such promise the contract was withdrawn, we can see no reason either in law or in morals that would preclude a recovery. The performance of the contract having been prevented by the defendant, the action was brought in the form of *indebitatus assumpsit*, and not directly upon the contract. This might be done, as the contract was the basis upon which the cause of action arose, and was admissible in evidence. (*Reynolds* v. *Jourdan*, 6 Cal. 108.) In fact the contract was admitted in evidence without objection. No objection was made to the form of the action. The ruling then went to the very essence of the case. In effect, it held that, conceding the facts to be true which the plaintiff was attempting to prove, yet he could not recover. It is said in Mechem on the Law of Agency (section 620) : "Thus, if, after a broker employed to sell property had in good faith expended money and labor in advertising for and finding a purchaser, and was in the midst of negotiations which were evidently and plainly approaching to success, the seller should revoke the authority with the purpose of availing himself of the broker's efforts, and avoiding the payment of his commissions, it could not be claimed that the agent had no remedy. In these cases it might well be said that there was an implied contract on the part of the principal to allow the agent a reasonable time for performance; that full performance was wrongfully prevented by the principal's own acts, and that the agent had earned his commission."

In the case of *Lane* v. *Albright*, 49 Ind. 279, where the owner of the real estate sold it pending negotiations in making a sale, and prior to the expiration of the time given by the

owner to the agent, and where the agent within the time given did find a purchaser, the court said: "The appellant performed all that he was required by the contract to do, and was prevented by the appellee from selling the land. The appellee disabled himself from carrying out the contract of sale made by the appellant. The fact that the appellee had authorized the appellant to sell his land did not deprive himself of the power of selling it, but he could not thereby avoid his liability to appellant."

In _Kimmell_ v. _Skelly,_ 130 Cal. 561, [62 Pac. 1067], it is said: "The brokers here did not agree to find a purchaser, but being employed to find one they were agents of defendant to that end, and were legally bound to use their time and labor for the benefit of their principal; and it is the use of this time and labor that forms the consideration to support her promise to pay them the compensation mentioned in the agreement." (See, further, _Toomy_ v. _Dunphy,_ 86 Cal. 639, [25 Pac. 130]; _Maze_ v. _Gordon,_ 96 Cal. 61, [30 Pac. 962]; _Blumenthal_ v. _Goodall,_ 89 Cal. 251, [26 Pac. 906].)

The plaintiff was entitled to prove, if he could do so, the facts claimed by him to exist. Of course if the court had heard the evidence, and the jury had concluded that the assignors of plaintiff performed no services or earned no commissions, and that the defendant made no promise to pay as claimed by plaintiff, these would have been matters for the jury to pass upon. It was error for the court to take the case from the jury and to preclude plaintiff from introducing his testimony.

The judgment is reversed.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1908.