[S. F. No. 13021. In Bank.—July 31, 1929.]

CHARLES S. ELMS, Appellant, v. MERRYMAN FRUIT, LAND AND LUMBER COMPANY (a Corporation), Respondent.

. Treadwell, Van Fleet & Laughlin, Resleure & Hill and Young & Hudson for Appellant.

John L. McNab and D. E. Perkins for Respondent.

SHENK, J.—This is an appeal from a judgment in favor of the defendant in an action to recover a commission of $75,000 on the sale of approximately 12,600 acres of timber

land in Humboldt County. The cause was tried with a jury. When the evidence was all in the court granted the motion of the defendant for a directed verdict. The plaintiff appeals from the judgment entered on the verdict so directed.

The defendant is a family corporation having its office in Los Angeles County. R. C. Merryman is the principal directing officer of the corporation. Other members of the family are nonresidents of this state. The father, A. C. Merryman, since deceased, has been an extensive lumber operator in the state of Wisconsin. He acquired the property in Humboldt County many years prior to the transactions here involved.

The plaintiff was and had been, for twenty-five years or more, engaged in the business of selling, as a broker, sawmills, timber lands and timber in numerous localities from New York to Kansas City and Minneapolis, and in the southern states. Prior to August, 1922, his residence and place of business was in New Orleans. About that time he moved to San Francisco. When in New Orleans and some time prior to September, 1921, he addressed a letter to the Holmes Eureka Lumber Company, of which Thomas W. Hine was general manager, inquiring about timber lands in California. Hine is a distant relative of the Merrymans, but his company has no connection with the defendant company. In September, 1921, the plaintiff and Hine had a conference in the St. Francis Hotel in San Francisco, at which time Hine informed the plaintiff that the defendant owned a large acreage of timber lands in Humboldt County and was anxious to sell the same. The next day the plaintiff met R. C. Merryman and in the presence of Hine talked over the situation fully. As a result of the conference Merryman requested the plaintiff to work on the sale of the land.

The plaintiff was not given an exclusive agency. Hine and others were given similar authority. From the testimony of the plaintiff it appeared that his engagement was to work upon the sale of the lands and if he "could produce a buyer" he would be paid a commission of five per cent on the sale price. By letter of August 9, 1922, to the defendant the plaintiff defined his contract as one under which he was to recover the commission in consideration of his

"naming the buyer and concluding the sale." Thereafter he sought to interest possible purchasers, some in this state and others in various sections of the United States. From time to time he suggested to the defendant numerous plans of financing the purchase and sale and the possibility of furthering the transaction by obtaining rights of way over the adjoining lands of another lumber company in order to provide a means of access to tide-water. The plans did not meet with the approval of the defendant and especially following his suggestion of obtaining rights of way the plaintiff was notified by letter of July 5, 1923, that the plaintiff's plans did not meet with the defendant's approval and that the parties hereto "might just as well call our negotiations off until our minds run in a closer channel." Being further dissatisfied with the plaintiff's subsequent efforts and methods, the defendant, by letter dated September 3, 1923, revoked the authority of the plaintiff to represent it. That the plaintiff acquiesced in the revocation, or at least received the same without objection, cannot be seriously doubted for he later requested the permission of the defendant to submit the sale of the lands to a certain Michigan lumber dealer. On December 21, 1923, the plaintiff wrote to Mr. Hine to the effect that a friend of the plaintiff's in Chicago was in touch with certain people who were desirous of starting redwood operations or of taking over a mill in operation and that said friend had requested the plaintiff to submit something that could be recommended and that would be available by January 20th. In this letter the plaintiff stated to Mr. Hine that the defendant's lands might be acceptable if the rights of way could be offered simultaneously with the lands. The letter concluded: "I would greatly appreciate your assistance in the matter and if you would consent to join me in the commission, this would be very agreeable." Mr. Hine replied: "The Merryman timber, as you know, is for sale but the matter of terms and price would have to be taken up with Mr. Merryman."

The lands were sold to the Charles Nelson Company under an option taken in February, 1924. The transaction was concluded in the following April for the purchase price of $1,500,000. Mr. Hine was paid the commission of $75,000 and divided it equally with Mr. H. W. Jackson, who was president of the Northern Redwood Lumber Company, a

subsidiary of the Charles Nelson Company, and who accepted the $37,500 on condition that it be applied as a credit on the purchase price to the Charles Nelson Company, which was done.

At all times mentioned in this controversy, James Tyson was the president and directing officer of the Charles Nelson Company. Mr. Merryman was first introduced to Mr. Tyson by Mr. Charles R. McCormick on October 19, 1923. Mr. Merryman asked Mr. Tyson if he would be interested in the defendant's property. Mr. Tyson replied that he was not interested and gave as his reason that the defendant's lands were not adjacent to his company's properties. Later on Mr. Hine was requested by Mr. Olmsted, a brother-in-law of Mr. Merryman, to find some way of getting logs from the Merryman lands to Humboldt Bay or to tide-water. On November 15th Mr. Hine approached Mr. Jackson and inquired of him if it were possible to have logs hauled from the Merryman lands to tide-water over the new road Mr. Jackson was then constructing up Mad River. Mr. Hine was informed that it would be necessary for him to see Mr. Tyson about it. About the middle of January, 1924, Mr. Hine called on Mr. Tyson in San Francisco for the particular purpose of making arrangements for hauling logs from the Merryman lands over the new road. Mr. Tyson rejected the proposition on the ground that his road was not a common carrier and he did not wish it to become such. During this conversation Mr. Hine first suggested to Mr. Tyson that the Merryman timber might be made available to the mills of the Northern Redwood Lumber Company. Mr. Tyson replied: "You convince Mr. Jackson, he is the operator of the concern. If you convince him it is, we will take the matter up and talk it over, but until you do I am not interested in it at all." Mr. Hine then began to work on Mr. Jackson and convinced him of the availability of the Merryman timber to his mills. The plaintiff never met Mr. Jackson nor had any correspondence with him, and Mr. Jackson had never heard of the plaintiff until this action was brought.

It is not disputed that the plaintiff first submitted the proposed sale of said lands to the Charles Nelson Company. This was preceded by an interview with Carl Bachen, an employee of the Charles Nelson Company, serving that

company as a contact man in the outer office of the president of the company in San Francisco, at which time Mr. Bachen suggested that the plaintiff submit his proposition in writing. Thereupon the plaintiff, under date of April 26, 1923, addressed a letter to the Charles Nelson Company, submitting the sale of said land to said company on terms subject to confirmation by the defendant. The terms of sale were disapproved by the defendant, and thereafter on May 12, 1923, the plaintiff submitted said lands to the Charles Nelson Company with accompanying maps on the authorized terms of $2,500,000, one-fifth in cash and the balance in nine equal payments. Four days later the maps were returned to the plaintiff by Mr. Tyson by mail. It cannot be questioned that the plaintiff earnestly endeavored to arouse the interest of the Charles Nelson Company in the purchase of said lands. However, but one conclusion can be drawn from the evidence as to the result of his efforts and that is, that he failed in his purpose. He therefore failed to fulfill the contract, which he himself defined, to name the buyer and conclude the sale.

In *Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 1 [206 Pac. 653, 660], relied upon by the plaintiff, it was said: "To constitute himself the *causa causans*, the predominating effective cause, it is not enough that the broker contributes indirectly or incidentally to the sale by imparting information which tends to arouse interest. He must set in motion a chain of events, which, without break in their continuity, cause the buyer and seller to come to terms as the proximate result of his peculiar activities." This the plaintiff has not shown by the record before us.

The plaintiff contends that, assuming his authority to have been revoked by the letter of September 3, 1923, such revocation was not made in good faith but was made in fraud of his rights, citing *Breen* v. *Roy*, 8 Cal. App. 475 [97 Pac. 170], *Sessions* v. *Pacific Imp. Co., supra, Blumenthal* v. *Goodall*, 89 Cal. 251, 255 [26 Pac. 906], and *Merkeley* v. *Fisk*, 179 Cal. 748 [178 Pac. 945]. The rule is that the revocation must be made in good faith and not for the purpose of defeating the agent's rights, and it is insisted that under the rule the question as to whether the revocation was in good faith or for the purpose of defeating the agent's commission is, in all cases, a matter for the jury and not

for the court. The defendant concedes the existence of the rule, but contends that cases may arise where the question of the existence of good faith or fraud is one for the court and that the present case is such an one.

We think that the defendant's position is the correct one, otherwise a nonsuit or a directed verdict could never occur. The question is, Do the facts permit of any other rational conclusion than that the revocation was in good faith?

We find no evidence in the record upon which a jury would be justified in finding bad faith or fraud on the part of the defendant in revoking the plaintiff's authority to proceed. Furthermore, we find nothing in the record which would justify a finding that the sale to the Charles Nelson Company was evidently and plainly approaching success when the authority of the plaintiff was revoked. On the contrary the evidence discloses, without reasonable inferences to the contrary, that the efforts of the plaintiff to arouse any interest in the sale on the part of the Charles Nelson Company had not met with success.

It would serve no useful purpose further to review the record, consisting of 217 exhibits and much oral testimony, in order to demonstrate that the motion for a directed verdict was properly granted. It is enough to say that the record, as well as the arguments and authorities presented by counsel, have been considered with care, and we find no error in the ruling of the trial court.

The judgment is affirmed.

Curtis, J., Waste, C. J., Seawell, J., Langdon, J., and Richards, J., concurred.