[Civ. No. 16625.   Second Dist., Div. Three.   June 2, 1949.]

A. M. HILLMAN et al., Respondents, v. JOSEPH KOCH, Appellant.

164

Albert H. Allen and Hyman Goldman for Appellant.

Martin Goldman and Alvin P. Jackson for Respondents.

SHINN, P. J.—Plaintiffs brought this action for the recovery of the sum of $2,362.05, designating their complaint as one for reformation of a contract and for damages. They were awarded the amount prayed for and the defendant appeals.

The cause of action is upon a written contract which the trial court found entitled plaintiffs to receive for their services as real estate brokers, the difference between $25,000 for which defendant's property was sold, and $22,500 which defendant agreed to accept for the property.

The controversy hinges upon the construction to be given to the agreement of sale between defendant and his purchaser, including a notation thereon with respect to the net selling price. Plaintiffs and defendant were real estate brokers. Defendant owned the real property in question, plaintiffs having no interest therein. On October 29, 1945, plaintiffs showed the property to Antoinette Cvirka. They had no written listing of the property, or agreement to act as defendant's brokers, although Hillman had been authorized orally by defendant to find a purchaser. Mrs. Cvirka, after inspecting the property, signed an agreement to purchase the same for $24,000, and she gave the brokers her check for $250 as a part of the purchase price, agreeing to pay $11,250 more and to take title subject to a mortgage or trust deed of record having an unpaid balance of $12,500. Both Luksis and Hillman signed the agreement as brokers. Hillman took the agreement to defendant and discussed with him the terms of the sale. Below the signatures that were already on the paper the following appeared in print:

"I agree to sell the above described property to said buyer upon the terms and conditions above stated and agree to pay to above named broker a commission of $_____, or ½ of buyer's deposit, if buyer shall default, but not to exceed the full amount of said commission." Defendant signed the agreement below this writing. Plaintiff Hillman and defendant testified that before defendant's signature was attached a pencil line had been drawn through the following words: "and agree to pay the above named broker a commission of." Upon the agreement, as it was introduced in evidence, there appeared immediately above the quoted printing the following: "22,500 net $22000 net." Immediately below the printing appeared the following: "Brokers pay escrow fee." Hillman testified that he first wrote "$22000 net" as the net price defendant had previously given him and that at defendant's direction he changed this to "22,500" and added "Brokers pay escrow fee" in the presence and at the request of defendant, before defendant signed the agreement. Defendant denied on the stand that the writing in question was on the agreement when he signed it, denied that he ever agreed to pay either Hillman or Luksis a commission, and asserted that it was definitely understood between Hillman and himself that the asking price of $25,000 he had quoted was his net price. After defendant signed the agreement he informed Hillman he would not sell the property for less than $25,000. Hillman reported this fact to Luksis and defendant gave the same information to Mrs. Cvirka by telephone. Escrow instructions were signed by Mrs. Cvirka by which she agreed to pay $25,000 for the property. Defendant also signed the instructions. At first they contained a direction to the escrow holder to pay a commission of $625 to the broker, Charles Luksis. This direction was inked out and the alteration initialed by defendant before he signed the instructions. Defendant also signed a separate instruction that he was to pay no commission "in this escrow." Luksis later signed below defendant's signature under a sentence reading: "I have read the above." Hillman testified that when this was arranged defendant explained that Hillman was to pay Luksis.

The complaint alleged and the court found that the written agreement of sale did not fully and correctly embody the real terms of the agreement and that the provision respecting the compensation of plaintiff should be reformed to read: "I agree to pay to the above named brokers all sums in excess of $22,500, received by me from the above named buyer, less the escrow fee,

said escrow fee being payable by said brokers.'' It was found that the sale was completed January 9, 1946, and that the escrow charges, including the cost of title insurance policy were $137.95.

The briefs of the parties are devoted to a discussion of the law applicable to reformation of instruments and the proof upon which the court decreed a reformation. Defendant contends that the agreement was insufficient to meet the requirements of the statute of frauds because it failed to show an employment of plaintiffs, and that the court was powerless to add anything to it by a judgment of reformation. In support of this contention he cites *Egan* v. *Pacific Southwest T. & S. Bank,* 92 Cal.App. 1 [267 P. 719], *Kleinsorge & Heilbrun* v. *Liness,* 17 Cal.App. 534 [120 P. 444], and *Patterson* v. *Torrey,* 18 Cal.App. 346 [123 P. 224]. These were actions based upon writings executed before the services of the brokers had been rendered. They are not in point. The agreement we are considering was entered into after the services of plaintiffs had been fully performed. ■ It is well settled that if the seller, after the services of the broker have been rendered, promises in writing to pay a commission, the agreement meets the requirements of the statute of frauds even though there was no previous employment of the broker. Acceptance of the benefits of the broker's services creates a moral obligation sufficient to furnish a consideration for the promise. (*Johnson* v. *Krier,* 59 Cal.App. 330 [210 P. 966]; *Corvin* v. *Smead Investment Co.,* 115 Cal.App. 175 [1 P.2d 507]; *Coulter* v. *Howard,* 203 Cal. 17 [262 P. 751].)

■ Defendant also contends that there was not sufficient evidence of fraud or mistake in drafting the agreement to justify reformation of it. This point is well taken.

The complaint alleged that defendant represented to plaintiffs, ''that said contract as executed would give plaintiffs all the proceeds of the sale of the property therein described in excess of the sum of $22,500.00, less the escrow fee. The plaintiffs and defendant thereupon agreed orally, in reliance upon said representations and upon said contract, that defendant would give to plaintiffs all the proceeds of the sale of said property to said buyer in excess of the sum of $22,500.00, less the escrow fee.''

It is unnecessary for us to decide whether the meager facts alleged, if they had been proved, would have furnished ground for reformation of the agreement. In the first place there was no evidence whatever of any discussion as to the meaning or

effect of the added words or that defendant made any statement or representation concerning them. In the second place the agreement, as written, has the meaning which, according to the complaint, it was intended to have. Insofar as the judgment attempts to reform the agreement it only states formally the understanding of the parties that was to be inferred from the writing, under a proper interpretation. The findings and conclusions constitute an interpretation of the agreement under which a promise to pay a commission is clearly implied. The element of reformation may be disregarded.

■ If there is uncertainty in the agreement it results from the absence of a specific statement that the plaintiffs were to receive as a commission the portion of the purchase price which defendant relinquished, namely, the difference between $22,500 and $24,000. In resolving the uncertainty consideration must be given to the circumstances under which the agreement was made and the matter to which it relates. (Civ. Code, § 1647.) If it was determined from the evidence that defendant believed the writing was understood by Hillman to be a promise to pay the brokers a commission it would be the duty of the court to interpret the uncertain provisions in accordance with Hillman's understanding. (Civ. Code, § 1649.) It is clear that the trial court did so find and that the finding was justified. It is not questioned that plaintiffs effected the sale. Upon conflicting evidence the court found that they did not agree to donate their services. The notations in Hillman's handwriting were added in the course of a discussion of the matter of a commission and immediately following the striking out with defendant's knowledge of a portion of the printed agreement for the payment of a commission. The additional words were clearly intended as a substitute for the printed ones. What remained, with what was added would reasonably be interpreted as an agreement by defendant to sell the property for the price and terms stated and to retain for himself only the sum of $22,500. Who, if not the brokers, was to receive the difference? Hillman and Luksis had signed the agreement as brokers, acknowledging the receipt of the deposit. The notation "Brokers pay escrow fee" obligated them to pay an uncertain sum, which they interpreted to mean the expenses of the sale in the amount of $137.95. The only reasonable inference from the facts found is that the parties understood the writing to be a promise of defendant to pay plaintiffs a commission, from which they would pay the expenses of the

sale due to the escrow, so that defendant would receive the full sum of $22,500 from the escrow. The essentials of a complete agreement were stated: the parties were named, the insertion of the net selling price and the provision that the brokers would pay part of the expense clearly indicated that a commission would be paid, and the amount of the commission appeared on the face of the instrument.

The statute requires only that a note or memorandum of the agreement be subscribed by the party to be charged. (Civ. Code, § 1624(5).) ■ While an essential element of the agreement may not be supplied by parol, the usual rules of interpretation are to be applied and the agreement will not be held deficient for the failure to express that which is clearly implied when the writing is interpreted in accordance with the intentions of the parties. (*Moore* v. *Borgfeldt,* 96 Cal. App. 306 [273 P. 1114]; *Carrington* v. *Smithers,* 26 Cal.App. 460 [147 P. 225]; *Toomy* v. *Dunphy,* 86 Cal. 639 [25 P. 130]; *Needham* v. *Abbot Kinney Co.,* 217 Cal. 72 [17 P.2d 109]; *Curran* v. *Hubbard,* 14 Cal.App. 733 [114 P. 81, 83].)

■ Defendant insists that his act of raising the price of the property be $25,000 should have been regarded by the trial court as conclusive proof that he had not previously signed an agreement to accept $22,500. It does seem strange that he would have insisted upon the higher price when he would gain nothing by it. Upon the other hand his testimony that plaintiffs were donating their services in his behalf was somewhat less than convincing. Although the result of adding $1,000 to the selling price was to increase the compensation of plaintiffs in that amount it did not otherwise affect their contract. Instead of seeking some modification of the agreement, in view of the higher price asked, defendant chose to deny all liability to pay a commission. These were problems for the trial court and do not present questions of law on the appeal. It was also a question of fact for the trial court whether the writing signed by Luksis in the escrow was intended as a waiver of plaintiffs' claim to a commission.

Plaintiffs were properly awarded the sum of $2,362.05, with interest.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied June 22, 1949, and appellant's petition for a hearing by the Supreme Court was denied July 28, 1949. Carter, J., voted for a hearing.