[Civ. No. 20892.   Second Dist., Div. Two.   Oct. 3, 1955.]

J. MONROE ALLEN, Respondent, v. A. L. GINDLING et al., Appellants.

Sylvan Y. Allen for Appellants.

Harry R. Roberts for Respondent.

FOX, J.—This is an appeal by the defendants from a judgment in favor of plaintiff for a real estate brokerage commission pursuant to written escrow instructions executed by defendants for the purchase of certain real property. Defendants failed to complete the purchase of the property. Thereupon, plaintiff brought this action for the recovery of his commission as provided in the instructions.

In seeking a reversal, defendants contend that: (1) plaintiff was not a duly licensed real estate broker; (2) a fictitiously named firm must have its own broker's license independent of such a license issued to a person doing business under the fictitious firm name as a sole proprietor; (3) it is not established that plaintiff was employed as a broker to represent the defendants in the purchase of the property in question; (4) there was no sufficient note or memorandum of plaintiff's employment to satisfy the statute of frauds; and (5) plaintiff failed to produce sellers who were ready, willing and able to convey the property to defendants in accordance with the escrow instructions.

In view of the nature of defendants' attack it is necessary to delineate the transaction in considerable detail.

Defendants, as buyers, entered into written escrow instructions dated May 1, 1953, for the purchase of certain real property from the Southwicks, as sellers, for the total price

of $158,000. In the buyers' part of the instructions, defendants agreed, *inter alia,* that "On or before July 15, 1953, I will hand you the sum of $148,000.00 [$10,000.00 was to be paid outside of escrow] which you will deliver when you obtain a deed to vestee named below of the hereinafter described property, *and on or before July 15, 1953, I will hand you the additional sum of $7,900.00 to cover payment of commissions as authorized below.*" (Emphasis added.) The buyers' part of the instructions then provided for the disposition of the above mentioned $7,900 in the following manner:

"Pay commissions as follows at close of escrow: (1) $3,950.00 to Merle Allen Co., 127 N. Bright Ave., Whittier, Calif., (2) $3,950.00 to . . . [another designated broker]."

The property being sold by the Southwicks, referred to in the escrow instructions as "Parcel I," was situated northerly of Whittier Boulevard, but did not adjoin this boulevard. By the terms of the escrow instructions, the Southwicks were to convey to the defendants the property in fee owned by them, together with a 60-foot easement for street, sanitary sewer and public utility purposes, over the land lying between the Southwick property and Whittier Boulevard, which easement was referred to in the instructions as "Parcel II." The property over which this easement was to pass was owned by the Campbells and a Mr. Tinker. The buyers and sellers supplemented their agreement as contained in the escrow instructions by executing, under date of May 11, 1953, an additional memorandum. It dealt with a number of details of the transaction, viz., the reservation by the sellers of the right to cultivate and remove crops for a designated period, the right of sellers to remove buildings, equipment, smudge pots, tanks, irrigation lines and agricultural supplies, and the reservation by the sellers of a parcel of approximately one acre. A formula for the adjustment of the price for the reserved parcel was established.

It was provided in the memorandum of May 11th that the $10,000 to be paid outside of escrow should be paid to sellers' attorney on or before 15 days after receipt of the preliminary title report, if said report was acceptable to the buyers.

On June 3, 1953, the title company furnished defendants a preliminary report on the property. The next day, defendant Gindling notified the attorneys for the sellers that objection was taken to a "wild easement," shown as Exception 2 in the report. Sellers' attorney, in due course, advised defendants that the title company was prepared to eliminate

this "wild easement," and demanded payment of the $10,000 deposit called for by the memorandum of May 11th within 15 days after notification by the title company to the buyers of the elimination of this exception. On June 12th the title company wrote defendants that it was prepared to eliminate this exception.

On June 25th defendants wrote the attorneys for the sellers, advising that they had examined the title report, and while acknowledging that the sellers held the easement for street, sanitary sewer and public utility purposes called for as Parcel II in the escrow instructions, the defendants requested that the sellers acquire fee title to the property covered by the easement and that the easement be dedicated by endorsement on a subdivision map.

On July 7th the sellers extended the closing date of the escrow to July 20th on condition that the defendants pay for the labor and materials for spraying the grove and thus protecting the oncoming crop, due to the delay in the escrow. Defendants were also informed that the acreage adjustment for the parcel reserved in the memorandum of May 11th had resulted in a credit of an additional $553 to the sellers from the buyers.

Well in advance of the closing date of the escrow, sellers deposited in escrow a duly executed grant deed to the property described in the instructions as Parcel I and Parcel II. This grant deed was in favor of the defendant corporation, as the buyers' nominee. The sellers had obtained a grant deed from the Campbells, in favor of the sellers, as grantees, covering the property designated as Parcel II. Sellers had also obtained a quitclaim deed to this same parcel from Tinker in favor of the defendant corporation as grantee.

On July 16th, a conference was held at the office of Musick and Burrell, attorneys for the sellers, in which Philip C. Jones, of that firm, advised defendant Gindling that the sellers had performed all things required on their part by the escrow instructions and the supplemental memorandum and agreements, and that they were ready to close the escrow. Gindling stated he was having some financial difficulties and requested an additional 90 days to close the escrow. The sellers declined to grant the 90-day extension. However, the sellers did agree at this conference to extend the closing date of the escrow to August 5th on condition that defendants deposit with sellers' attorneys by July 21st $11,500, representing the $10,000 to be paid out of escrow and $1,500 for

the cost of spraying and grove maintenance. In the presence of all parties, including Gindling, Mr. Jones dictated a letter, setting forth the terms of an extension to August 5th. Gindling made no objection to the deposit or to the terms of the letter as dictated. He failed, however, to keep an appointment to return and sign an approval of the letter.

No money was ever deposited by defendants with the sellers' attorneys. Defendants did, however, on July 21st, deposit $11,500 with the escrow holder.

Philip Wills, a broker in the employ of plaintiff, telephoned Gindling on July 29th that the title sheet for defendants' proposed subdivision had been signed by Tinker and all the Campbells except David S. Campbell, who resided in Arizona. Gindling told him that it was important to get all the signatures as soon as possible—to go to Arizona and get this signature; that they intended to go through with the deal. Wills and plaintiff went to Arizona the next day and secured the required signature. On July 31, Wills delivered the title sheet, bearing the signatures of all the Campbells and Tinker, to the title company and notified Gindling that all the signatures had been obtained.

On the last mentioned date, Mr. Jones, on behalf of the sellers, advised defendants that the Campbells and Tinker had signed the title sheet and that the Southwicks had instructed him to cancel the escrow on August 6, unless prior thereto defendants had done three things: (1) released the $11,500 deposited in the escrow by the buyers, to be held in the attorneys' trust account; (2) deposited in the escrow the balance of the purchase price; (3) deposited an additional $553 to compensate for the adjustment of the size of the reserved parcel. He stated that if the buyers performed these conditions the escrow would be extended to August 29.

A final conference was held on this deal in Mr. Jones' office on August 4, at which were present two of the three sellers, Mr. Jones, defendant Gindling, Wills and another broker. Gindling stated to those present that he was unable to secure the financing he had expected and that he desired a further extension of the escrow. The sellers, however, were unwilling to grant additional time. The parties thereupon executed a cancellation of the escrow.

Plaintiff is a real estate broker with an office in Whittier, California. He testified he had been so licensed in this state since 1941. His license for the fiscal year commencing July 1, 1953, was issued in his individual name. Plaintiff is the

sole proprietor of his real estate brokerage business and he has no partners. He operates his business under the name of "Merle Allen Company," that being the name under which his father operated the business prior to his death in 1940. Plaintiff had complied with the fictitious name statute.

In their answer defendants admitted the employment of plaintiff to represent them in their efforts to purchase the property here in question.

In view of plaintiff's testimony that he had been a licensed real estate broker since 1941 and the production of his 1953-1954 license, effective July 1, 1953, there can be no doubt that he was duly authorized to act as a broker in this transaction and entitled to recover commissions earned in such employment. (Bus. & Prof. Code, § 10136; *Houston* v. *Williams,* 53 Cal.App. 267, 271 [200 P. 55]; *Wise* v. *Radis,* 74 Cal.App. 765, 772 [242 P. 90].) ▮ Defendants, however, take the position that since the brokerage fee was payable by the terms of the escrow instructions to Merle Allen Company, plaintiff cannot recover because the fictitious firm name under which he operated did not also have a broker's license. *Heinfelt* v. *Arth,* 135 Cal.App. 445 [27 P.2d 420] (hearing denied), furnishes a complete answer to this contention. In that case two brokers, each holding a real estate broker's license in his individual name and who were doing business as copartners under the firm name of National Realty Company, were held to be entitled to maintain an action for a commission payable to them under their firm name. The case was decided under section 20 of the California Real Estate Act (Stats. 1919, ch. 605, p. 1259) which has been incorporated, without substantial change, into section 10136, Business and Professions Code. After examining the underlying purposes of the act, as requiring brokers to be honest, truthful and of good character, the court concluded there was no requirement that licensed brokers hold an additional license in their firm name. In passing on the point the court stated (pp. 449-450) : "Where each of the two partners are already licensed it would be a mere matter of form to require a separate license in the name of the partnership. This would accomplish nothing useful in carrying out the purpose of the act and would, in fact, call for merely a double license for persons whose qualifications have already been favorably passed upon. . . . In the absence of a positive provision to the contrary, it is in accord with both the letter and the spirit of the act to hold that fully licensed individuals may

work in partnership with each other without obtaining another license in the firm name . . ."* This reasoning applies, *a fortiori*, to the instant case since plaintiff was the sole proprietor of the firm under whose name he operated. The court went on to observe (p. 450) that "The evidence is not before us, but if the fact be that the written authorization named the National Realty Company instead of naming the plaintiffs individually, that fact would make no difference . . ." since the "identity of the agent may be shown by parol." Thus in the instant case, although the authorization in defendants' escrow instructions was to pay a commission of $3,950 to Merle Allen Company plaintiff was entitled to show by parol that he was the Merle Allen Company.

Defendants vainly attempt, for the first time on appeal, to question plaintiff's employment to represent them in their efforts to acquire the property in question. In paragraph six of his complaint, plaintiff alleged that "the execution and delivery of the aforesaid escrow instructions [between the Southwicks and the defendants] were the result of negotiations conducted on behalf of defendants by plaintiff within the scope and course of his employment by defendants . . ." In their answer defendants specifically admitted "the allegations contained in paragraph . . . VI of the complaint." Thus the fact of plaintiff's employment by defendants was not an issue in the trial court. It may not therefore be raised on appeal.

There is no merit whatever in defendants' contention that there is no sufficient note or memorandum of plaintiff's employment to satisfy the statute of frauds (Civ. Code, § 1624, subd. 5), in view of the provisions in the escrow instructions that defendants signed to the effect that they would provide "$7,900.00 to cover payment of commission as authorized below" which was followed by a direction to "Pay commissions as follows at close of escrow: (1) $3,950.00 [the amount for which recovery is here sought] to Merle Allen Co., . . ."

---

*Subsequent to the cancellation of the escrow between the Southwicks and defendants, the Real Estate Commissioner of California, on August 17, 1953, promulgated a new regulation that became effective 30 days thereafter which provided as follows:

"License Bearing Fictitious Name Required. No fictitious name shall be used by a broker in the conduct of any business for which a license is required under the Real Estate Law, unless a license bearing such fictitious name has been issued to said broker." (Cal. Admin. Code, § 2730.5, tit. 10.)

Since this administrative regulation was to be given prospective effect only, it cannot have any application to the case at hand.

The execution of such instructions by defendants was clearly sufficient to satisfy the statute of frauds. (*Smith* v. *Frans Nelson & Sons, Inc.,* 214 Cal. 295 [5 P.2d 427] ; *Coulter* v. *Howard,* 203 Cal. 17 [262 P. 751] ; *Devereux* v. *Sirkus,* 105 Cal.App.2d 340 [233 P.2d 644].)

As to defendants' contention that the evidence is insufficient to sustain the finding that plaintiff produced sellers who were ready, willing and able to convey the property to defendants in accordance with the escrow instructions and supplemental memorandum, a reading of the evidence recited herein demonstrates the lack of merit in their position. Clearly, the evidence and the reasonable inferences to be drawn therefrom amply support the challenged finding.

The reason this deal did not go through was not because the sellers were not ready, willing and able to convey the property in accordance with the agreement of the parties, but rather, as the judge pointed out at the conclusion of the trial, "Mr. Gindling attempted to withdraw from the transaction for the sole reason he did not have the money to put up . . ."

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.