[Civ. No. 5314. Fourth Dist. Apr. 13, 1956.]

G. M. SANSTRUM, Respondent, v. INA GONSER, Appellant.

Lester N. Gonser for Appellant.

Lee G. Brown, for Respondent.

CONLEY, J. pro tem.*—This is an appeal by the defendant, Ina Gonser, from a judgment in favor of the plaintiff, G. M. Sanstrum, for a real estate broker's commission in the sum of $1,025. The principal questions to be decided are whether there was a sufficient memorandum in writing to satisfy the requirements of the statute of frauds and if so, whether there was performance within the terms of such contract. In the court below, defendant consistently maintained her position that she is not liable, through her pleadings, a motion for judgment on the pleadings and timely objections to the evidence.

Plaintiff, a duly licensed real estate broker, bases his claim that there was a sufficient memorandum to justify a recovery of 5 per cent of the selling price of defendant's ranch near Laton in Fresno County, on three writings. His complaint as amended first alleges that defendant orally engaged him on or about the 20th of March, 1954, as an agent to sell her land and ''that plaintiff thereupon undertook the negotiation of

*Assigned by Chairman of Judicial Council.

the sale of said land belonging to defendant upon the terms and conditions agreed upon and suggested by defendant.'' As a contract ''authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission'' is void ''unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent,'' (Civ. Code, § 1624, subd. 5); *Zeimer* v. *Antisell*, 75 Cal. 509, 511 [17 P. 642]; *Myres* v. *Surryhne*, 67 Cal. 657 [8 P. 523]; *Jamison* v. *Hyde*, 141 Cal. 109, 112 [74 P. 695]; *Augustine* v. *Trucco*, 124 Cal.App.2d 229, 237 [268 P.2d 780]; *Hooper* v. *Mayfield*, 114 Cal.App.2d 802, 806 [251 P.2d 330]; *Sweeley* v. *Gordon*, 47 Cal.App.2d 381, 383 [118 P.2d 14]; *Ford* v. *Palisades Corp.*, 101 Cal.App.2d 491, 498 [225 P.2d 545]) the plaintiff then refers to three writings which he claims to be sufficient to meet the specifications of the statute.

The first (Exhibit A attached to the complaint) is a letter reading as follows:

''March 30, 1954
Visalia, California

''Dear Mr. Sanstrum:

''Since we have set a price on the Laton place there is a realtor in Hanford who would also like to handle the selling of the property. Before placing it in his hands I should like to know just how interested your client is in buying, his financial background, and a little about him personally in order to know just what to do.

''Thank you.

Yours truly,

Ina Gonser
1502 Shady Lane
Visalia, California
Phone 4-4881.''

This first letter does not meet the requirements of a sufficient memorandum. The ''setting of a price'' on land does not imply the employment of a broker (*Patterson* v. *Torrey*, 18 Cal.App. 346 [123 P. 224]) and mere interest on the part of a ''client'' of a real estate agent does not give him any ground for claiming remuneration from the landowner for a possible sale of the property (*Hooper* v. *Mayfield*, 114 Cal. App.2d 802, 808 [251 P.2d 330]; *Edens* v. *Stoddard*, 126 Cal.App.2d 56, 60 [271 P.2d 610].) In fact the letter, par-

ticularly when considered in connection with plaintiff's reply (Exhibit B attached to the complaint) in which he says: "If you will let me know your terms, I have other clients whom I could work on for a sale for you," seems to indicate that no details of a sale had been announced by defendant and that no general oral contract had been entered into between the parties under which defendant had authorized him to secure a purchaser for a compensation to be paid to him.

The second letter (Complaint, Exhibit C) is equally ineffective:

> "Visalia, California,
> April 19, 1954

"Dear Mr. Sanstrum:

"Please let me know as soon as possible whether you have heard from Mr. Patrick. There is a Fresno realtor who is anxious to try to sell the property.

"Thank you.

> Yours truly,
> INA GONSER."

As is said in *Blanchard* v. *Pauley,* 92 Cal.App.2d 244, 247 [206 P.2d 864]:

"The rule is settled that in a suit by a broker to recover a real estate commission in order to show compliance with the statute the writing signed by the party to be charged or his agent must unequivocally show on its face the fact of employment of the broker; that is, it must show an authority to act or negotiate a sale of the property for the owner." (See also *Edens* v. *Stoddard, supra,* 126 Cal.App.2d 56, 59; *Herzog* v. *Blatt,* 80 Cal.App.2d 340, 342 [180 P.2d 30]; *Kleinsorge & Heilbron* v. *Liness,* 17 Cal.App. 534, 536 [120 P. 444]; *Patterson* v. *Torrey,* 18 Cal.App. 346 [123 P. 224].)

Clarity requires a short summary of the evidence relative to the preceding negotiations for the sale of the property before we consider the third writing relied upon by respondent. Mr. Sanstrum had written to one Casey Patrick, a grocery store proprietor, at Quincy, California, with whom he had previously become acquainted in connection with the sale of 40 acres in the vicinity, advising him that he could buy the Gonser place for $25,000. Several letters passed between them, including one in which Mr. Patrick said he would be willing to pay $21,000 for the property; this fact was communicated to Mrs. Gonser and she stated the figure was

acceptable. However, the details of the transaction had not been agreed to, and Mrs. Gonser, who was moving to San Luis Obispo, went to the Security Title Insurance Company office in Hanford, and with the assistance of the plaintiff, directed the preparation of complete escrow instructions which were then signed by her. This is the third writing which plaintiff relies upon as a memorandum (Complaint, Exhibit D).

The escrow instructions, on a single sheet of paper, are in the usual two parts, one to be signed by the Patricks but never executed by them, and one actually signed by the defendant. As dictated by her, the proposed agreement by the Patricks was that they should pay $6,000 into escrow and deposit a note and trust deed for $15,000 to complete the purchase of the land, the note to bear interest at the rate of 6 per cent per annum rather than the 4 per cent which Patrick previously had expressed a willingness to pay, with annual installments of $1,000 or more payable on the 11th day of each May, commencing in 1955, and terminating in 1964 but containing the further provision: "Payees agree with payor to pay $5,000 on principal of this note, in addition to any and all other payments called for, immediately after completion of the sale of their property at Quincy, California." The sale was specified as being subject to an existing unrecorded farm lease with buyers to receive all rentals, and called for a proration of the 1953-1954 taxes and of the rental of the house on the premises; the cost of recording the deed and trust deed and one-half the escrow fee were to be borne by the buyers.

The part of the escrow instructions signed by the defendant approved the buyer's portion of the proposed escrow, and gave directions to the escrow holder with respect to the disbursement of funds as follows:

"1. Reimburse yourself for advances chargeable to me and deduct your charges as hereinafter specified.

"2. Pay G. M. Sanstrum a commission in the amount of $ 5% of the sale price. Broker's License No._____ Mail check to him at_____.

"3. Pay demand of ___none___ ,

"Provided buyers acceptance of this escrow in writing is not in escrow agents hands by May 17, 1954, then this escrow shall be cancelled.

"Whose address is_____

"4. Pay balance to seller and mail check to (address) shown below.

"I agree to pay policy of title insurance, revenue stamps and ½ of escrow fee.

"Attach Internal Revenue Stamps to deed in the amount of $23.10

"INA GONSER 190 Toro, San Luis Obispo, Calif.
Sellers Address Phone Number"

The Patricks upon being contacted at Quincy, advanced adamant objections to several of the proposed terms of the sale, including the interest rate demanded by Mrs. Gonser on deferred payments of principal, and the escrow instructions were never signed by them. The deadline of May 17, 1954, passed with no contract of sale entered into. On May 29th Mrs. Gonser told the plaintiff that the deal was off and a deposit which Mr. Patrick had made with plaintiff was returned to him; Mr. Sanstrum did nothing further in the matter.

Returning to a consideration of Mrs. Gonser's signed portion of the escrow writing, we conclude that within their self-imposed limits these instructions, considered in the light of Mr. Sanstrum's testimony concerning precedent oral negotiations, constituted a memorandum which would have been sufficient to satisfy the requirements of section 1624, subdivision 5 of the Civil Code if the Patricks had executed their part of the escrow instructions, and the sale had been effected. (*Coulter* v. *Howard,* 203 Cal. 17, 22 [262 P. 751]; *Devereux* v. *Sirkus,* 105 Cal.App.2d 340, 344 [233 P.2d 644]; *Allen* v. *Gindling,* 136 Cal.App.2d 21, 27 [288 P.2d 130]; *Fritz* v. *Frost,* 114 Cal.App. 602, 607 [300 P. 454]; *Corvin* v. *Smead Inv. Co.,* 115 Cal.App. 175, 178 [1 P.2d 507]; *Hillman* v. *Koch,* 92 Cal.App.2d 163 [206 P.2d 434].)

But this is not equivalent to saying, as the trial judge did, that the direction in the uncompleted escrow instructions to pay a commission to the broker if and when the proposed sale should be consummated on the express terms specified may be taken out of its context and treated as a memorandum of a general and continuing brokerage contract. The distinction between the two situations is made clear in *Irwin* v. *Klimper,* 56 Cal.App. 434, 435 [205 P. 714], in which it is held that a direction in escrow instructions to pay a commission to a broker upon the close of the escrow does not constitute a general agreement employing the broker to sell the property

or a promise to pay a commission, except on the express conditions set forth. "It is an order which, at most, might be construed to be an acknowledgment of obligation on the part of the defendant to pay the stated commission out of the purchase price on completion of the transaction, that is to say, upon transfer of the property and payment of the consideration." Under such circumstances, the broker would have to prove the completion of the escrow before he would become entitled to be paid.

In her part of the escrow instructions, Mrs. Gonser did not agree generally that Mr. Sanstrum should be her broker for the sale of the property and that she would pay him a commission if he should procure a purchaser ready, able and willing to complete the transaction upon terms prescribed by her; what was said was that the escrow holder should pay Mr. Sanstrum a commission in the amount of 5 per cent of the sale price if the proposed sale should be effected on the terms stated by May 17, 1954. What was observed in *Hargrave* v. *Moody,* 56 Cal.App. 498, 502 [205 P. 890], is applicable here:

"This instruction was quite different from an unconditional acknowledgment of the alleged debt; it rested upon a condition, to wit, that it should be paid out of money which the proposed vendee should deposit when the escrow transaction was completed. The conditions authorizing this payment to be made never were satisfied."

*Smith* v. *Frans Nelson & Sons, Inc.,* 214 Cal. 295 [5 P.2d 427], is directly in point; it was there held that when a broker relies upon escrow instructions to support his claim for a commission, ". . . unless overcome by some direct attack in equity, the broker must accept the apposite burdens and conditions contained" therein, and if ". . . the legal effect of the contract is to provide for the payment of a commission only upon completion of the escrow transaction, so as to invest the defendant with a clear title to the property it is to receive in exchange for its own, the commission does not become due where through no fault of the defendant, the transaction is never completed." The court pointed out that ". . . the commissions were to be due and payable to plaintiff only upon the consummation of the transaction according to its tenor. By this contract, in the absence of other written agreement, plaintiff must be bound," citing *Brion* v. *Cahill,* 34 Cal.App. 258 [165 P. 704], *Jennings* v. *Jordan,* 31 Cal.App. 335 [160 P. 576], and *Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 751].

 *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 306 [266 P.2d 856], correctly states the rule applicable to the memorandum in this case as follows:

''Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract. If the customer refuses to perform, or if the contract is canceled or rescinded, the broker cannot recover. In such case the broker, not having the protection of the ordinary broker's contract for compensation for service to be performed, must stand or fall on the contract actually entered into; and if he has seen fit to allow payment of his compensation to be dependent upon the performance of a contract made between parties other than himself, he cannot complain if, through the nonperformance of that contract, his own contingent rights be lost.''

 The rule is the same as when the principal and broker enter into a contract for the payment of a commission only upon the happening of some specified contingency, or the performance of a condition precedent. (See also *Holland* v. *Flash,* 20 Cal.App. 686 [130 P. 32]; *Ridgway* v. *Chase,* 122 Cal.App.2d 840 [265 P.2d 603]; *McGill* v. *Fleming,* 32 Cal. App.2d 601, 604 [90 P.2d 341]; *Denbo* v. *Weston Inv. Co.,* 112 Cal.App.2d 153, 157 [245 P.2d 650]; *Palmtag* v. *Danielson,* 30 Cal.2d 517, 521 [183 P.2d 265]; *Backman* v. *Guadalupe Realty Co.,* 78 Cal.App. 347, 352 [248 P. 296]; *Hodges* v. *Lewis,* 112 Cal.App.2d 526, 528 [246 P.2d 676]; *Wilson* v. *Security-First Nat. Bank,* 84 Cal.App.2d 427, 433 [190 P.2d 975].)

 The time limitation inserted in the escrow instructions was entirely legal and failure to perform within that period, in the absence of fraud on the part of the defendant, would deprive plaintiff of any right to recover. (*Ridgway* v. *Chase, supra,* 122 Cal.App.2d 840, 848; *Naylor* v. *Ashton,* 20 Cal.App. 544, 546 [130 P. 181]; *Howard* v. *Burrow,* 77 Cal.App. 4, 7 [245 P. 808].)

On the foregoing principles of law, we shall cite only one additional case, *Dale* v. *Raines,* 115 Cal.App.2d 309 [252 P.2d 22], decided by this court in 1953. While the broker there had a general listing agreement, he depended for recovery on a set of escrow instructions because the terms of sale stated therein were different from those contained in his original contract; the escrow instructions provided that the completion of the transaction was contingent upon the seller's ability

to perfect title and close the escrow by August 30, 1950; title was not cleared and the escrow was not closed. The broker could not recover:

"This transaction was made dependent upon the happening of a condition. The instructions became a special contract between the parties, which contract was approved by plaintiff. Under the circumstances shown, plaintiff's claim for commission must be based upon the escrow instructions and where, as here, his commission is dependent upon an unfulfilled condition, he cannot recover."

There remains one enquiry—was Mrs. Gonser guilty of fraud so that there could be a legitimate finding of prevention of performance? The court found: "It is true that defendant wrongfully prevented plaintiff from completing the negotiations for the sale of said premises in that defendant broke off negotiations thereby preventing completion thereof by plaintiff, as such broker, when he had the likely and reasonable prospect of successful completion of such negotiations, and said defendant broke off such negotiations in order to avoid her obligation to plaintiff for a broker's commission while availing herself of the fruits of plaintiff's work and the expenses incurred by him in connection therewith." This finding is wholly unsupported by any direct evidence and it seems to this court that no legitimate inference can be drawn from the record to justify it. As already stated, the parties had agreed on a $21,000 price with the Patricks willing to pay 4 per cent, afterwards changed to 4½ per cent, on deferred payments. Mrs. Gonser made her counteroffer in the form of the escrow instructions which document furnishes the sole support to plaintiff's claim that there was a memorandum satisfying the statute of frauds. This set of instructions, among other things, provided for 6 per cent interest on deferred payments, contained a requirement that $5,000 must be paid on the note when the Patricks should sell their Quincy property and placed an express time limit for acceptance to wit, May 17, 1954; Mr. Sanstrum testified that he was present at the title company's office with Mrs. Gonser, and that he helped her prepare the instructions and witnessed her signature. The Patricks did not agree to these terms and did not sign the papers, and after Mr. Sanstrum arranged for a meeting between the parties for May 30, Mrs. Gonser, on May 29, telephoned him that "she was tired of the deal, it was a mess, wasn't going to sell the property, she

changed her mind." Mr. Sanstrum thereupon returned Mr. Patrick's check for $1,000 which he had deposited with him.

About two weeks afterwards, on June 15th, Mrs. Gonser wrote Patrick asking if he would still consider buying the property and a contract was finally negotiated directly between the principals culminating in the execution of new escrow instructions on June 28th which differed in a number of important particulars from those of May 11th. As consummated, the agreement called for the payment of $20,500, with 5 per cent interest on deferred payments and eliminated the provision for the $5,000 payment on the note in case of the sale of the Quincy property.

Neither Mrs. Gonser, nor Mr. Patrick was a witness at the trial. If the record had shown, for example, that after the execution by Mrs. Gonser of her part of the escrow agreement of May 11 there was an agreement between her and Mr. Patrick that there would be a sale on the terms demanded by Mrs. Gonser or on modified terms, but that they would postpone the consummation of the sale until after May 17th (or any extension which might have been granted, expressly or impliedly), so as to deprive plaintiff of his right to a commission, then plaintiff would have had a legitimate claim of prevention of performance. ■ For if performance by a broker is frustrated by the wrongful or fraudulent act of the principal, recovery may be made by the broker (*Merkeley* v. *Fisk,* 179 Cal. 748, 758 [178 P. 945]; *Elms* v. *Merryman Fruit etc. Co.,* 207 Cal. 747, 751 [279 P. 781].) But this is pure speculation by way of illustration only; there is no substantial evidence in the present record to justify any such idea, or to warrant any such finding as the trial court made.

■ A legitimate conclusion might be reached that the time within which the sale could be consummated was extended by Mrs. Gonser from May 17 to May 29 by her continued parleying up to that date (*Baker* v. *Curtis,* 105 Cal.App.2d 663, 669 [234 P.2d 153]) but she had an absolute right, if acting in good faith, to terminate negotiations on May 29th (*Heffernan* v. *Merrill Estate Co.,* 77 Cal.App.2d 106, 112-113 [174 P.2d 710].)

■ Fraud is never presumed; it must be established by clear proof and the presumption in favor of fair dealing approximates in strength that of innocence of crime (*Hedden* v. *Waldeck,* 9 Cal.2d 631, 636 [72 P.2d 114]). ■ After fruitless insistence upon certain terms of a transaction, a woman decides she is "tired of the deal, that it is a mess,"

that she has changed her mind about selling and so notifies the real estate agent; there is no evidentiary hint of conspiracy between buyer and seller; the realtor, satisfied that everything is as it appears to be, returns the deposit to the prospective buyer and ceases further activity. Two weeks later the seller again changes her mind, reopens direct negotiations and the sale takes place on terms substantially different from those demanded previously by the respective parties. On the basis of the record as it exists there is no justification for the finding of prevention.

We conclude that the first two letters of the defendant (Exhibits A and C attached to the complaint), considered together or separately, wholly fail to satisfy the requirements of a proper memorandum under the statute of frauds; that the escrow instructions of May 11, 1954, within the limits fixed by the writing itself, constitute a sufficient memorandum, the conditions being that acceptance of the escrow proposal must take place on the terms and within the time limit, or any extension thereof, specified therein; that there is no substantial evidence of fraud or prevention within the meaning of the law, and that on the present record the plaintiff is not entitled to recover.

Accordingly, the judgment is reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 9, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 6, 1956. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.