47 Cal.2d 62 (1956)
301 P.2d 825
PACIFIC SOUTHWEST DEVELOPMENT CORPORATION (a Corporation), Appellant,
v.
WESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent.
Docket No. L.A. 23646.
Supreme Court of California. In Bank.
October 5, 1956.
*63 Gregory M. Creutz for Appellant.
Smith, Van Dyke & Hildreth, H. Allen Smith and Jack E. Hildreth for Respondent.
*64 SPENCE, J.
Plaintiff, a licensed real estate broker, sought compensation for alleged services rendered in connection with defendant's procurement of an option to purchase certain real property. The amended complaint contained in evidentiary detail all the facts on which plaintiff based its right to compensation, including the correspondence between the parties, which was set out in haec verba. At the outset of the trial, the court declared its opinion that plaintiff could not recover because the pleaded agreement was not in writing as required by the statute of frauds. Plaintiff thereupon made an offer of proof, and it was stipulated that the documents pleaded in the amended complaint were deemed to have been offered in evidence, that an objection was made thereto and sustained by the court. Judgment was then entered for defendant, and plaintiff appeals.
As grounds for reversal, plaintiff contends: (1) that the pleaded agreement does not come within the statute of frauds; but (2) if the statute does apply, there was a sufficient writing as required; and (3) in any event defendant is estopped to rely on the statute as a defense. Our review of the record, in the light of the authorities hereinafter cited, leads to the conclusion that plaintiff's contentions cannot be sustained.
The substance of plaintiff's offer of proof is as follows: Cliff A. Nelson, then an employee of the Fortune Realty Company of San Jose, conducted certain negotiations with defendant's representative, F.B. Stratton, for the purchase of the property in question. Various propositions, offers, and counteroffers were discussed by the parties relating to the purchase but no definite arrangements were concluded as to the price to be paid, or concerning any employment of Nelson individually, or of Fortune Realty Company to represent defendant. While negotiations were still pending and on August 15, 1950, Nelson became an employee of plaintiff and remained in such employ until December 15, 1950. Meanwhile Nelson and Stratton continued to correspond. On August 29, Stratton wrote to Nelson suggesting a price of $3,000 per acre and $1,500 for an option. Nelson responded by letter of August 31, advising Stratton that a meeting should be arranged and proposing a 5 per cent commission as defendant's broker.
On September 6, 1950, Stratton met Nelson and plaintiff's president Creutz in Los Angeles. At that time Creutz examined a proposed option agreement submitted by Stratton, *65 subsequently redrafted it, and on September 8, he mailed it to Stratton. Defendant apparently was endeavoring to obtain an option for a purchase price of less than $3,000 per acre. Another meeting of Stratton, Nelson and Creutz was had on September 21, and the option agreement was revised to state the price of $2,500 per acre for the property and $1,500 payable for the option. A few days later Creutz and Nelson conferred with Lenfest, the owner of the property, and the latter's attorney concerning the option agreement. At that time Lenfest objected to the $2,500 per acre price contained in the option agreement and subsequently, on October 3, through his attorney, declined the offer. Nelson reported the outcome immediately to Stratton, who thereupon declared that there was "no hurry about the deal" and "just kind of let him (Lenfest) simmer along." Then without further call upon plaintiff or Nelson, and on October 5, 1950, Lenfest met Stratton and they orally agreed upon an option for a purchase price of $2,750 per acre. This oral agreement was reduced to writing and signed on December 15, 1950. Thereafter pursuant to its terms, defendant purchased the property for $204,517.50, escrow arrangements were concluded, and on June 25, 1951, Stratton forwarded to the Fortune Realty Company defendant's check for $5,112.94, "representing agreed to commission in connection with the purchase ... of the Lenfest property" and with the understanding that "one-half of the above amount, or $2,556.47, will be paid by you to Mr. Nelson." This reference to "agreed to commission" obviously related to the correspondence between Nelson, Stratton, and Fortune Realty Company in May and June, 1951, whereby those parties agreed upon a commission of 2 1/2 per cent of the purchase price to be divided equally between Nelson and Fortune Realty Company, which correspondence was written long after Nelson had left the employ of plaintiff and long after the time that Stratton had obtained the option from Lenfest. Now plaintiff by this action claims that 5 per cent of the total price, or $10,225.87, is owing for its alleged services to defendant.
Plaintiff contends that an agreement authorizing or employing a broker to obtain an option to purchase real property is not within the statute of frauds and therefore is not subject to the requirement that it or some note or memorandum thereof be in writing. (Civ. Code, § 1624, subd. 5; Code Civ. Proc., § 1973, subd. 5.) In support of its position, plaintiff relies on these settled principles: that an option to purchase *66 real property is a contract containing an irrevocable and continuing offer to sell at a stipulated price within a specified time; that it conveys no interest in land to the optionee but vests in him only a right in personam to buy at his election; and that such agreement relating to the sale of land is "by no means a sale of property, but is a sale of a right to purchase." (Warner Bros. Pictures, Inc. v. Brodel, 31 Cal.2d 766, 772 [192 P.2d 949, 3 A.L.R.2d 691]; Hicks v. Christeson, 174 Cal. 712, 716 [164 P. 395]; Transamerica Corp. v. Parrington, 115 Cal. App.2d 346, 351-353 [252 P.2d 385]; see, also, Kritt v. Athens Hills Dev. Co., 109 Cal. App.2d 642, 646 [241 P.2d 606]; Seeburg v. El Royale Corp., 54 Cal. App.2d 1, 4 [128 P.2d 362].) However, the cases upon which plaintiff relies were not concerned with the application of the statute of frauds but only with the distinction between the "option contract" and the "contract to which the irrevocable offer of the optionor relates." (Warner Bros. Pictures v. Brodel, supra.) It therefore does not follow, as plaintiff contends, that since an option contract is not itself a contract for the purchase or sale of real estate but only evidences the "right" to performance of such agreed act, a contract employing a broker to obtain the option does not fall within the statute of frauds.
In California an option to purchase real property has been held to come within the statute of frauds and so must be in writing. (Bovo v. Abrahamson, 100 Cal. App. 373, 383 [280 P. 191].) The propriety of this holding was recognized in Wilson v. Bailey, 8 Cal.2d 416 [65 P.2d 770], where the enforcement of an oral extension of a written option to repurchase certain real property was in question. After observing that "certain contracts to be enforceable are required to be in writing, or that some note or memorandum thereof be in writing, subscribed by the party to be charged or his agent" (Civ. Code, § 1624; Code Civ. Proc., § 1973), the court stated that it is "equally well settled that the facts of a particular case may give rise to an equitable estoppel against the party seeking to set up the statute of frauds and foreclose such party from relying thereon." (P. 421.) Upon this basis of equitable estoppel, the court held that the fact of oral extension of the option would not defeat the optionee's rights thereunder.
Plaintiff cites Howard v. D.W. Hobson Co., 38 Cal. App. 445 [176 P. 715], for the proposition that a broker may recover on an oral contract of employment to procure an option *67 for the purchase of real property. But that case concerned an agreement between two brokers to divide equally a commission to be paid upon the sale of the land. This court, upon denying the application for a hearing in that case, said at pages 460-461: "... we deem it proper to say that we are not prepared to hold that subdivision 6 of section 1624 of the Civil Code [now subd. 5] is not applicable in the case of a simple contract between a real estate agent or broker and a proposed purchaser to obtain an option for the purchase of real estate by the purchaser. The opinion clearly shows that this was in substance a joint venture on the part of plaintiff and defendant for the sale of real property of a third party, and the distribution of the profits between them. The District Court of Appeal was clearly right in concluding that subdivision 6 of section 1624 of the Civil Code [now subd. 5] does not extend to agreements between brokers to cooperate in making sales for the sake of the commission or profits and that this substantially was such a case."
[1] The term "real estate" as used in our statute of frauds (Civ. Code, § 1624, subd. 5; Code Civ. Proc., § 1973, subd. 5) conforms with the common law definition of real property as including only a freehold interest in land, and excludes estates for years or lesser duration. (Dabney v. Edwards, 5 Cal.2d 1, 6-7 [53 P.2d 962, 103 A.L.R. 822].) Therefore, it has been held that while a contract employing a broker to purchase or sell real estate comes within the statute of frauds (Marks v. Walter G. McCarty Corp., 33 Cal.2d 814, 819 [205 P.2d 1025]), a contract employing a broker to sell oil and gas leases running only for a fixed term of years does not, because the latter employment relates to "chattels real," a species of personal property as distinguished from "real estate" or "real property." (Dabney v. Edwards, supra.)
[2] In determining the nature of the services which will bring an employment contract within the statute, the phrase "to sell or purchase" includes "to aid or assist in the purchase or sale" of real estate. (Hooper v. Mayfield, 114 Cal. App.2d 802, 806 [251 P.2d 330]; Duckworth v. Schumacher, 135 Cal. App. 661, 666 [27 P.2d 919].) Such broad construction of the term conforms with one of the primary purposes of the statute, the protection of real estate owners from the assertion of false claims by brokers and agents. (Toomy v. Dunphy, 86 Cal. 639, 642 [25 P. 130]; also Gorham v. Heiman, 90 Cal. 346, 358 [27 P. 289]; Hooper v. Mayfield, *68 supra, 114 Cal. App.2d 802, 807.) [3] Likewise, the procurement of an option agreement for the purchase of real property is a contract that aids or assists in the purchase or sale of real property, and properly comes within the provisions of the statute. [4] Accordingly, a contract employing a broker to obtain an option for the purchase of real property, like a contract employing a broker to purchase or sell real property (Steiner v. Rowley, 35 Cal.2d 713, 717 [221 P.2d 9]; Marks v. Walter G. McCarty Corp., supra), comes within the statute and must be in writing. To hold otherwise would open the door to the assertion of unfounded claims by brokers and others on the pretense of oral employment in real estate transactions relative to options, and so frustrate the purpose of the statute.
Plaintiff next claims that if the statute of frauds is held to apply to the contract of employment in procuring the option, there nevertheless was a sufficient writing to comply therewith "subscribed by the party to be charged, or his agent." (Civ. Code, § 1624, subd. 5; Code Civ. Proc., § 1973, subd. 5.) But an examination of the documents on which plaintiff relies to meet the specifications of the statute discloses their insufficiency.
[5] The chief element required to be shown in writing is the fact of employment of the broker to act for the principal in the transaction. (9 Cal.Jur.2d § 40, p. 185; Toomy v. Dunphy, supra, 86 Cal. 639, 642; Hooper v. Mayfield, supra, 114 Cal. App.2d 802, 807; Moore v. Borgfeldt, 96 Cal. App. 306, 309-310 [273 P. 1114].) [6] To satisfy this requirement, plaintiff refers to the considerable correspondence between Nelson and Stratton on the subject, but in such exchange there is only one letter written by Stratton, while Nelson was employed by plaintiff. In that letter dated August 29, 1950, and addressed to Nelson, Stratton stated: "I am in a position to take an option on the Lenfest property at $3,000.00 per acre. We would not wish to pay more than $1,500.00 for the option and would want it for 90 days, with a contingent extension of time long enough to have the property rezoned.... If you think this proposal is worth your trip, let me know perhaps by telephone tomorrow and I will arrange to meet you at San Jose  maybe we can get the deal signed up...."
The above letter merely states the terms and conditions on which defendant was willing to negotiate for the property, but it does not show employment of plaintiff to act for defendant. *69 (Morrill v. Barneson, 30 Cal. App.2d 598, 600 [86 P.2d 924]; Egan v. Pacific Southwest Trust & Sav. Bank, 92 Cal. App. 1, 3 [267 P. 719]; Patterson v. Torrey, 18 Cal. App. 346, 348 [123 P. 224]; Kleinsorge & Heilbron v. Liness, 17 Cal. App. 534, 535-537 [120 P. 444].) Furthermore, the last sentence of the letter indicates that various details yet remained for consideration in completing any transaction. It is true that Nelson, on plaintiff's behalf, acknowledged Stratton's letter stating that he would be "willing to start negotiations on the basis of $2,500 per acre  [defendant] to pay the 5% commission"; that thereafter Stratton met with Nelson and plaintiff's president, Creutz, and the option papers were drawn, submitted to Lenfest, and finally rejected because Lenfest refused to sell at the $2,500 acreage price. But such writing by Nelson and subsequent meetings with Stratton in attempting to work out a suitable arrangement for purchase of the Lenfest property cannot satisfy the statutory requirement of a writing "subscribed by the party to be charged, or his agent."
The only writing with which defendant can be charged here is the letter of August 29, 1950, by Stratton to Nelson, and as above quoted, it made no reference to the fact of employment by defendant of plaintiff or to any compensation. [7] True, the latter reference is not essential if there is a contract of employment, for a reasonable amount as a commission will be inferred. (Toomy v. Dunphy, supra, 86 Cal. 639, 642-643; Caminetti v. National Guar. Life Co., 56 Cal. App.2d 92, 96 [132 P.2d 318].) But where there is a failure to mention the fact of employment, the further fact that there is no mention of a commission is significant. [8] The authorities require that a writing "subscribed by the party to be charged, or his agent" must unequivocally show the fact of employment of the broker seeking to recover a real estate commission (Steiner v. Rowley, supra, 35 Cal.2d 713, 717; Marks v. Walter G. McCarty Corp., supra, 33 Cal.2d 814, 819; Sanstrum v. Gonser, 140 Cal. App.2d 732, 736 [295 P.2d 532]; Hooper v. Mayfield, supra, 114 Cal. App.2d 802, 807; Colburn v. Sessin, 94 Cal. App.2d 4, 6 [209 P.2d 989]; Blanchard v. Pauley, 92 Cal. App.2d 244, 247 [206 P.2d 864]; Herzog v. Blatt, 80 Cal. App.2d 340, 342 [180 P.2d 30]). It must therefore be concluded that the writings here are insufficient under the statute of frauds to sustain plaintiff's claim. [9] As was said regarding this statute in Egan v. Pacific Southwest Trust & Sav. Bank, supra, 92 Cal. App. 1, *70 at page 5: "When a law has been enacted for the purpose of protection against the assertion of unfounded claims, it should be so construed as to effect the object of the enactment."
[10] Nor is there any merit to plaintiff's contention that defendant is estopped to plead the statute of frauds by reason of the fact that Stratton, on behalf of defendant, finally concluded an option agreement with Lenfest for purchase of the property and the sale was subsequently consummated. This is not a case of unconscionable injury to plaintiff because of a change of position in reliance upon the alleged contract of employment (Le Blond v. Wolfe, 83 Cal. App.2d 282 [188 P.2d 278]) or an unjust enrichment of defendant through acceptance of the benefits of the alleged contract without itself being obligated thereunder. (Monarco v. Lo Greco, 35 Cal.2d 621 [220 P.2d 737].) The fact that plaintiff rendered services and conducted unsuccessful negotiations with Lenfest does not constitute a change of position to plaintiff's detriment, nor does the fact that defendant refused to pay plaintiff a real estate commission upon an option which defendant later procured through direct negotiations with Lenfest constitute an unjust enrichment within the meaning of the estoppel doctrine. To hold otherwise, in the absence of any showing of fraud, would defeat the purpose of the statute of frauds in relation to real estate transactions. (Hicks v. Post, 154 Cal. 22, 28 [96 P. 878]; Augustine v. Trucco, 124 Cal. App.2d 229, 241-244 [268 P.2d 780]; Hooper v. Mayfield, supra, 114 Cal. App.2d 802, 809; Colburn v. Sessin, supra, 94 Cal. App.2d 4, 6.)
[11] Plaintiff is a licensed real estate broker and, as such, is presumed to know that contracts for real estate commissions are invalid and unenforceable unless put in writing and subscribed by the person to be charged. (Civ. Code, § 1624, subd. 5; Code Civ. Proc., § 1973, subd. 5; Steiner v. Rowley, supra, 35 Cal.2d 713, 717; Marks v. Walter G. McCarty Corp., supra, 33 Cal.2d 814, 819.) Nevertheless, plaintiff failed to secure proper written authorization to protect itself in the transaction. Rather it assumed the risk of relying upon claimed oral promises of defendant, and it has no cause for complaint if its efforts go unrewarded. (Augustine v. Trucco, supra, 124 Cal. App.2d 229, 241.)
In conclusion, it should be said that this case clearly illustrates the desirability of requiring a written memorandum of a contract employing any person as a broker in a transaction of the type involved. Prior to the time that Stratton *71 obtained the option directly from Lenfest at the price of $2,750 per acre, there was no memorandum signed by Stratton which unequivocally evidenced the employment, as defendant's broker, of Nelson individually or Fortune Realty Company, which was Nelson's former employer, or plaintiff, which was Nelson's subsequent employer. A reference to employment and compensation was contained in the above-mentioned letter from Nelson to Stratton dated August 31, 1950, which suggested that a 5 per cent commission be paid by defendant, but this was on the basis of securing an option from Lenfest, the seller, at the price of $2,500 per acre and subject to negotiations concerning certain further conditions. Prior to that letter, the correspondence between Nelson and Stratton is entirely consistent with the idea that Nelson or his employer should look to the owner of the property for any compensation which might be anticipated. Not only did Stratton never agree in writing to Nelson's suggestion of August 31, concerning employment or commission but furthermore, no option to purchase at $2,500 per acre was ever obtained. After Lenfest refused to grant an option at that price and on satisfactory conditions, Stratton and Lenfest negotiated directly, and without the aid of any broker, upon the final terms of an option at $2,750 per acre. In this situation, and without any showing in the record that there was any binding obligation on the part of defendant to pay a broker's commission to anyone, defendant finally agreed to, and did pay to, Fortune Realty Company and Nelson the sum of $5,112.94 for their services. There is therefore no legal or equitable basis shown to sustain plaintiff's action against defendant for its claimed compensation in said transaction.
The judgment is affirmed.
Gibson, C.J., Shenk, J., and Traynor, J., concurred.
McCOMB, J.
I dissent for the reasons set forth by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal in (Cal. App.) 293 P.2d 800.
SCHAUER, J., Dissenting.
I agree with Justice McComb that the judgment should be reversed but I prefer to place the reversal on another ground.
Regardless of whether an agreement employing a real estate broker, for a commission, to secure an option to purchase real property does or does not come within the provisions *72 of subdivision 5 of section 1624 of the Civil Code (and Code Civ. Proc., § 1973, subd. 5), I am of the view that plaintiff is entitled to a hearing on the merits of his claim.
The amended complaint alleges, and the offer of proof comprehends a showing, that: (1) Nelson, the negotiating salesman, was, throughout most of the period he was rendering the service to defendant, an employe of plaintiff broker; (2) defendant was aware of the above stated relationship, and its dealings with salesman Nelson, under the circumstances, appear to be dealings with Nelson's employer, the broker-plaintiff; (3) defendant, through its authorized employe Stratton, wrote Nelson, "I think everything is in order for the acquisition of the property and as soon as the escrow is closed will get in touch with you so that the commission factor can be disposed of. Believe I told you we would pay 50% [sic] commission through Fortune with the understanding that you would receive half."
The above quoted writing, which is subscribed by Stratton with his signature over the designation of his office with defendant, "Industrial Commissioner," appears on its face to constitute "some note or memorandum" of employment and of obligation to pay a commission. Perhaps "Fortune," as well as plaintiff and Nelson, should be parties to the litigation with defendant, but defendant, having acknowledged the employment of an "agent or broker" and an obligation to pay a commission for Nelson's services as a real estate agent rendered during a time when he was employed by the plaintiff broker, is not in my view entitled to judgment on demurrer. A writing made subsequent to partial execution of the agreement meets the statute of frauds. (See Walsh v. Standart (1917), 174 Cal. 807, 810 [164 P. 795]; 23 Cal. Jur.2d 365-366, and cases there cited.)
In this connection it is further to be noted that Nelson on July 24, 1950, advised defendant that "Re my new connection, I will be in charge of the Industrial Department of Pacific Southwest Development Corporation ... Have written my superior, Mr. Gregory M. Creutz, who is President ... about our development deal here in San Jose. Haven't had a chance to discuss it with him personally yet but believe we will be interested." In response to the above mentioned letter defendant's representative addressed his letter as follows, "Mr. Cliff A. Nelson, Manager Industrial Department, Pacific Southwest Development Corp.," and stated therein that "I am in a position to take an option on the Lenfest property *73 at $3,000.00 per acre. We would not wish to pay more than $1,500.00 for the option ..." Thereafter, under date of September 8, 1950, Mr. Nelson on the letterhead of "Pacific Southwest Development Corporation" wrote to defendant's representative that "In keeping with our conversation of Wednesday it is our understanding that the five per cent commission on the final sale price of the properties mentioned ... would be paid to us by Western Pacific Railroad and we would not look to Lenfest or Cappelloni for any commissions. We prefer this since we are going to represent you rather than the sellers.... As mentioned, Pacific Southwest Development Corporation will take care of an equitable payment that may appear to be due to Fortune Realty for their work up to the date of my coming with this corporation and transferring my salesman's license down here from Fortune Realty Co."
In the light of the circumstances shown I am of the view that a question of mixed law and fact arises. Is it not permissible to construe defendant's admission of employment of a broker or agent, and admission of liability for a commission, as running in favor of plaintiff? It seems to me that we should not hold on demurrer (to the evidence as well as the pleading) that a construction in favor of plaintiff could not be supported.
For the reasons above stated I would reverse the judgment.
CARTER, J.
I dissent.
I agree with Mr. Justice McComb that an agreement to obtain an option to buy real property does not come within an agreement employing an agent "to purchase or sell real estate" within the statute of frauds inasmuch as it is nothing more than employing an agent to obtain personal property  a chose in action. (Civ. Code, § 1624, subd. 5.) In addition to the discussion in the able and learned opinion prepared by Mr. Justice Fourt for the District Court of Appeal (Cal. App.) 293 P.2d 800 adopted by Mr. Justice McComb, it should be mentioned that real property is defined as lands, tenements and hereditaments (Code Civ. Proc., § 17, subd. 2) and personal property includes goods, chattels and "things in action" (id., § 17, subd. 3). Hence an option being a chose in action is personal, not real, property. Real estate and real property are synonymous (City of Santa Barbara v. Maher, 25 Cal. App.2d 325 [77 P.2d 306]) and that is true with reference to the statute of frauds (Civ. Code, § 1624, subd. 5), *74 here involved. (Dabney v. Edwards, 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822].) An agent's charge for procuring a lease is not subject to the statute of frauds. (Dabney v. Edwards, supra, 5 Cal.2d 1.) There is no more reason why, therefore, obtaining an option to buy, should be read into the statute.
I also agree with Mr. Justice Schauer in his dissent, that, assuming a writing is necessary the case should be tried to see if there is a sufficient memorandum here. The memorandum pleaded appears to be sufficient.
I further believe, however, that on the third ground urged by plaintiff, estoppel, the defendant could not rely on the statute of frauds. In Monarco v. Lo Greco, 35 Cal.2d 621 [220 P.2d 737], this court clarified the law in relation to estoppel to plead the statute of frauds. This court stated two fundamental principles: (1) Estoppel to rely on the statute of frauds may exist where injury would result when the party has changed his position in reliance on the oral contract, or (2) unjust enrichment would result to the other person if he were permitted to assert the statute successfully. The question then is only, was the injury which resulted from plaintiff's change of position, and the resulting unjust enrichment of defendant, sufficient. In the Monarco case the supplying of services to the parents for many years in reliance on the oral contract was held enough under both principles. In the instant case plaintiff had rendered valuable services to defendant to obtain an option on the land in reliance on the oral contract and hence was injured. Defendant was unjustly enriched by the acceptance of those services (he obtained the option) for which he refused to pay. Suppose plaintiff had devoted all of his time to the project for five years, would there be any doubt that there was both injury and unjust enrichment? In Ruinello v. Murray, 36 Cal.2d 687 [227 P.2d 251], this court held there was no injury because the employee was paid for his services but clearly intimated he could recover the reasonable value thereof to the extent it was above what he was actually paid. There can be no doubt, therefore, that plaintiff here should be entitled to recover the reasonable value of his services even though the contract was oral. Some of the cases cited in the majority opinion for the proposition that there cannot be estoppel as to real estate brokers' contracts were before the decision in the Monarco case (see Hicks v. Post, 154 Cal. 22 [96 P. 878]; Colburn v. Sessin, *75 94 Cal. App.2d 4 [209 P.2d 989]) and the others do not mention or discuss it. (See Augustine v. Trucco, 124 Cal. App.2d 229 [268 P.2d 780]; Hooper v. Mayfield, 114 Cal. App.2d 802 [251 P.2d 330].)
I would reverse the judgment.
Appellant's petition for a rehearing was denied October 31, 1956. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.