[Civ. No. 22110.  Second Dist., Div. One.  Nov. 12, 1957.]

JOHN CHARLES ABELL, Appellant, v. D. D. WATSON, as Real Estate Commissioner, etc., Respondent.

Macfarlane, Schaefer & Haun, Henry Schaefer, Jr., and Jerol R. Hodges for Appellant.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Respondent.

DRAPEAU, J.*—John Charles Abell, appellant in this case, is a real estate salesman, licensed by the Division of Real Estate of the Department of Investment of California. Mr. Abell was agent for William W. Hubbard, to sell Mr. Hubbard's dwelling house.

Mr. Hubbard said he wanted $17,500 net to him. So Mr. Abell arranged an escrow, in which the purchaser named was Mr. Abell's sister or her nominee. The escrow was closed by payment of the purchase price and a deed conveying the property to Mr. Abell's wife.

But Mr. Abell did not tell Mr. Hubbard that the purchaser was to be either his sister or his wife.

The Real Estate Commissioner charged Mr. Abell with fraud and dishonest dealing as defined in the real estate law.

*Assigned by Chairman of Judicial Council.

(Bus. & Prof. Code, § 10176, subd. (i) ; and see *Adams* v. *Herman,* 106 Cal.App.2d 92 [234 P.2d 695].)

A hearing examiner for the Division of Real Estate heard the charges, found them true, and recommended the suspension of Mr. Abell's license for three months.

The Real Estate Commissioner adopted the report and recommendation, and later denied a petition for rehearing.

Mr. Abell petitioned the superior court for a writ of mandate, to compel the Real Estate Commissioner to revoke the order. After hearing, this petition was denied, and Mr. Abell appeals to this court from the judgment.

The hearing examiner found, among other things:

"That these facts should be taken into consideration for the purposes of mitigation; that respondent, from and since 1949, has been licensed and actively engaged in the real estate business; that he is married and has a family and depends upon the real estate business for his livelihood; that from the period between 1950 and 1954 respondent was an active producer, earning for his employing broker as her share of his commissions a sum in excess of $30,000; that there arose friction between respondent and his employing broker which resulted in respondent's desiring to transfer to another employing broker; that at the time of the transfer respondent's employing broker refused to make a transfer, at such time complaining to the Division of Real Estate; that although after the opening of escrow respondent's employing broker became aware of the fact that the purchaser of the property was respondent's sister, this fact was not communicated to Hubbard; that the Hubbard property had been listed with the Vogel Company for a period of time, and that that company was not able to make a sale; that upon the trial of this matter Hubbard testified that it made no difference to him that the property was sold to respondent's sister, that all that he wanted was to receive the sum of $17,500 net, and that he had received that sum; that the Hubbard transaction was set up in escrow to provide for no commission; that during the course of the escrow respondent's employing broker became aware of that fact, and that the escrow was corrected to provide for payment of commission to respondent's employing broker; that the reason the escrow was set up without providing originally for commission payment was because of the fact that Hubbard desired it to be set up in that fashion; that the evidence does not establish that respondent intended to at any

time deprive his employing broker of any share of commission to which she might have been entitled.''

Mr. Abell emphasizes that Mr. Hubbard made no complaint against him. Mr. Hubbard said that he didn't care whether or not the property was sold to Mr. Abell's sister or to his wife; that when he got $17,500, he got all he wanted.

We don't think the record would sustain a finding of fraud or dishonest dealing by Mr. Abell, in the generally accepted meaning of these words. But the record does sustain a finding of breach of fiduciary duty by Mr. Abell to his client, whether Mr. Hubbard cared or not. The Adams case (*Adams v. Herman, supra,* 106 Cal.App.2d 92) holds that such a breach of fiduciary duty comes within the definition of fraud and dishonest dealing, as these words are used in the code. In the circumstances of this case a full disclosure prior to the sale of the property to the wife of appellant should have been made.

To hold otherwise would be to approve a practice by which a real estate broker or salesman could himself purchase a client's property without his knowledge, by having it conveyed to the wife or other relative of the broker or salesman. This would open the door to all sorts of chicanery and double dealing, and would be contrary to the purpose and intent of the real estate law.

'' 'The general principle which denies the agent the right, without the knowledge and consent of the principal, to become the purchaser of property which he is employed to sell for the principal is aimed at an indirect or collusive sale or transfer, as well as a direct sale or transfer to the agent. *It precludes the agent from selling or conveying to the agent's spouse,* to a corporation in which the agent has a large concealed interest, indirectly to himself in the name of a third person, and even to a clerk of the agent who is engaged in the affairs of the vendor relating to the sale of the land.' '' (Italics are in the reported decision.)

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 6, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.