[Civ. No. 24278. Second Dist., Div. One. Aug. 22, 1960]

F. J. BUCKLEY, Appellant, v. WYNNE A. SAVAGE, as Real Estate Commissioner, etc., Respondent.

Wolver & Wolver, David H. Cannon and J. Marion Wright for Appellant.

Stanley Mosk, Attorney General, and Arthur C. DeGoede, Deputy Attorney General, for Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment denying the appellant's petition for a writ of mandate.

Appellant was a real estate broker. His license as such was revoked by the respondent, and appellant thereafter filed his petition for a writ of mandate to compel the respondent to desist from any action upon the decision and order revoking the license of appellant as a real estate broker and to revoke the order of revocation and to reinstate the appellant as a real estate broker. From the judgment denying the petition, the appellant has appealed.

In an accusation filed by respondent the appellant was charged with violating the provisions of certain sections of the Business and Professions Code.[1]

(1) 10176, subdivision (a)—Making substantial misrepre-

---

[1]Section 10176, Business and Professions Code, provides in part:

"The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this State, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following:

"(a) Making any substantial misrepresentation.

"(b) Making any false promises of a character likely to influence, persuade or induce.

"(c) . . . . . . . . . . . . . .

"(d) Acting for more than one party in a transaction without the knowledge or consent of all parties thereto.

"(e) . . . . . . . . . . . . . .

"(f) . . . . . . . . . . . . . .

"(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to do any acts for which a license is required under this chapter for compensation or commission prior to or coincident with the signing of an agreement evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether

sentations; (2) 10176, subdivision (d)—Acting for more than one party in a transaction without the knowledge or consent of all parties thereto; (3) 10176, subdivision (g)—Taking of a secret or undisclosed amount of compensation, commission or profit; (4) 10176, subdivision (i)—Conducting himself in a manner which constitutes fraud or dishonest dealings; (5) 10177, subdivision (d)—Willfully disregarding provisions of the Real Estate Law and rules and regulations of the Real Estate Commissioner; (6) 10177, subdivision (f)—Conducting himself in a manner which would have warranted the denial of an application for a real estate license; and (7) 10177, subdivision (g)—Demonstrating negligence, or incompetence in performing an act for which he is required to hold a license.

The accusation came about from a transaction whereby Buckley used a "dummy," Germaine S. Chambreau, to purchase certain property from Margaret F. Slusher.

A résumé of some of the facts as developed in the administrative hearing is as follows:

In March, 1955, Buckley observed that the Slusher property, which was located around the corner from his real estate office, was vacant. He contacted Mrs. Slusher and obtained a listing to sell the place. He represented that he had been a realtor on Wilshire Boulevard for many years and that he had many inquiries about the property. He further stated that he had one client who was interested because the property was large and had six bedrooms. Mrs. Slusher stated that she had not

---

evidenced by documents in an escrow or by any other or different procedure.

"(h) . . . . . . . . . . . . . . .

"(i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

Section 10177 of the Business and Professions Code provides in part:

"The commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following:

"(a) . . . . . . . . . . . . . . .

"(b) . . . . . . . . . . . . . . .

"(c) . . . . . . . . . . . . . . .

"(d) Willfully disregarded or violated any of the provisions of the Real Estate Law or of Chapter 1 of Part 2 or of the Rules and Regulations of the commissioner for the administration and enforcement of the Real Estate Law and Chapter 1 of Part 2.

"(e) . . . . . . . . . . . . . . .

"(f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license.

"(g) Demonstrated negligence or incompetence in performing any act for which he is required to hold a license.

"( . . . . . . . . . . . . . . . ."

thought particularly of selling the property but that she would and that she had been offered $35,000 for it some five years ago and that she would sell it for that figure, including a 5 per cent commission. Buckley stated that he could secure $35,000 to $37,500 for it and that the commission would be five per cent. Mrs. Slusher would not give a written exclusive listing but she did give an oral exclusive listing for 60 days while certain painting and renovating work was being done in and on the property. Buckley stated that he would ask $37,500 in an attempt to get $35,000 and he received a key to the property from Mrs. Slusher at that time.

In a letter on his stationery under date of March 17, 1955, to Mrs. Slusher, Buckley stated in part:

"May I not also thank you for letting us have the exclusive agency on your property at 674 South Crenshaw for $35,000 with $10,000, or more, down payment, and the balance, if any, payable 1% per month including interest at 6%, until paid.

". . . I am confident we will be successful in selling it for you. In order to obtain $35,000, including our commission, I have quoted it at $37,500 because frequently they offer less than the amount of the asking price. If perchance, we received more than $35,000 you are assured our commission would be only 5% and you would receive the benefit of the excess, if any.

" . . . . . . . . . . . .

"I did want you to know that I have been doing some work on your properties, although I took some time out today, St. Patrick's Day, to meet the Irish Ambassador, and expect to see him again at the California Club tonight."

Buckley told his office employees that he was trying to sell the place and he showed the premises to several prospective buyers. When the painters were about to finish their work at which time about 60 days had elapsed from the date of the exclusive listing, Buckley and Mrs. Slusher met at her home and Buckley stated that he knew he could sell the place but that it had been difficult to show it while the workmen were present and working. Buckley asked for and received an indefinite extension of time in which to sell the property. He continued his efforts to sell the place after the workmen had left. Buckley then went East for two or three weeks in May, 1955 and after his return to California in June he showed the place to some prospective buyers and also began to think of buying the property for himself.

About July 1, 1955, Buckley decided to buy the property

for himself and contacted a widow named Germaine S. Chambreau, whom he had known for some years. Mrs. Chambreau signed a letter to Buckley which reads as follows:

"In offering to purchase the property at 674 S. Crenshaw, Los Angeles, or any other property, it is not for my account but for the account of E. Haiss, whom (sic) is advancing all of the money required.

"I have no present or future interest in the property and if I should acquire title I will convey it to any person designated by E. Haiss.

"Of course it is understood that I am to be held free and harmless from all expense and liability in connection with the transaction.

Very truly yours,

/S/ G. S. CHAMBREAU

G. S. CHAMBRAU [sic]

"I agree to hold you free and harmless from all expense and liability in connection with the transaction.

/S/ F. J. BUCKLEY

F. J. Buckley"

About August 1, 1955, Mrs. Slusher went to Buckley's office to get the key to her property as she had forgotten to bring her own key. A lady and a salesman at the office of Buckley told her that the Slusher property was not listed with them. The key to the property could not be found at that time. However, later the lady came by the Slusher property and brought the key with her, stating that Buckley had several keys and that Mrs. Slusher might keep the one which was then given to her. Later that same day Mrs. Slusher called Buckley on the telephone and told him the property was not listed at his office, that the house had been broken into and that if the property was not sold within the next week she would have to rent it. Buckley told her that the property would be sold in a week or two and that a man who was out of the city just then was trying to raise money with which to buy the property.

Buckley told Mrs. Chambreau that he had come to the end of the time for the sale of the property and that he should produce an offer with which to get an extension. On August 9, 1955, Mrs. Chambreau signed what she was told was an

offer to buy the property. In fact what Mrs. Chambreau signed on August 9 was a ''Deposit Receipt'' which showed that $1,000 had been received from her as a deposit on the purchase price of $33,000 for the property, the balance to be paid as follows: $9,000 in cash in escrow upon demand when title was ready to pass and $23,000 by the execution of a note secured by a deed of trust on the property payable at the rate of $200 per month. On August 9, the day before an escrow was opened, Buckley told Mrs. Slusher that he had an offer of $33,000 cash on her property from a gentleman whom he did not name and read to her a check in the amount of $1,000 payable to F. J. Buckley and Company, as a deposit. Buckley answered Mrs. Slusher's inquiry about why the check was made in favor of Buckley and Company by saying that such was frequently done. Mrs. Slusher agreed to take $33,000 instead of the $35,000 or $37,500 theretofore spoken of. At Buckley's request the escrow was to be at the Wilshire Escrow Company rather than with the Title Insurance and Trust Company which Mrs. Slusher preferred.

On the same day Buckley dictated certain escrow instructions to an escrow officer at the Wilshire Escrow Company. These instructions called for a sales price of $31,350, payable $8,350 cash and $23,000 by a note payable $200 per month and secured by a deed of trust on the property. At Buckley's request Mrs. Chambreau signed the escrow instructions without knowing that they were instruments for the purchase of property by her. She had no intention of purchasing anything. She also signed a note and deed of trust in the transaction without any intent to perform any of the obligations and she never gave any money to Buckley nor did she place any money in the escrow for the purchase of the property. Buckley told Mrs. Chambreau that all of the last mentioned documents referred to the offer. She asked to read the instruments but was told by Buckley that she would not understand them and to trust him.

On August 10, 1955, Mrs. Slusher and Buckley met at the escrow office and signed the instruments. Certain changes were then made. The instruments in effect provided that Buckley was to be compensated by the purchaser for services rendered and that Buckley was not acting as the agent for the seller. Mrs. Slusher did not receive a copy of the instruments. She read them but did not remember the contents as above set forth and she expressed surprise at the absence of the buyer, Chambreau. Mrs. Chambreau executed amend-

ments to the escrow instruments at the request of Buckley wherein she authorized the escrow company to accept instruments on behalf of G. S. Chambreau from F. J. Buckley.

The deposit receipt and offer which recited on its face that the price of the property was $33,000 and the acceptance thereof by Mrs. Slusher of "less $1,650.00" was not deposited in the escrow. The receipt was prepared under the direction of Buckley and the provision therein for a $1,650.00 commission to be paid to Buckley was crossed out. When the "less $1,650.00" was typed in does not appear from the evidence.

Mrs. Slusher executed a deed at the escrow office which did not contain the phrase "a widow" after the name G. S. Chambreau.

After the escrow instructions were signed Buckley had Mrs. Chambreau sign a deed conveying the property to "E. Haiss." Mrs. Chambreau did not know that by such document she was deeding the property nor did she know E. Haiss. E. Haiss was the maiden name of Mrs. Buckley. The escrow closed on September 1, 1955. The Chambreau-Haiss deed was recorded on December 12, 1955, at which time the property was then deeded to a corporation wholly owned by Mr. and Mrs. Buckley.

At no time did Buckley advise Mrs. Slusher that he was no longer acting as her agent. At no time prior to the closing of the escrow did Buckley tell Mrs. Slusher that he was buying the property for himself or for himself and his wife. At no time did he tell Mrs. Slusher who "E. Haiss" was nor did he disclose to her who G. S. Chambreau was, other than to refer repeatedly to the person as G. S. Chambreau and saying that "he" was a gentleman in business.

Further and additional facts with reference to the transaction may be found in the report of the decision in the case of *Slusher* v. *Buckley*, 174 Cal.App.2d 324, 330 [344 P.2d 905], decided by this court.

The Real Estate Commissioner, respondent, revoked the license of appellant, jointly and severally, upon the grounds that he had made substantial misrepresentations by failing to disclose that Mrs. Chambreau was not in fact a bona fide purchaser but was a "dummy" or nominee of Buckley; by failing to disclose that the $1,000 deposit was not from Mrs. Chambreau; or that the title was to be taken in his wife's maiden name. Further, that he had acted for more than one party in the transaction without the knowledge and consent

of all parties thereto and that he acted by Mrs. Chambreau and Mrs. Buckley, under the name of E. Haiss, without the knowledge and consent of Mrs. Slusher; that the acts of Buckley constituted fraud or dishonest dealing; that he had conducted himself in a manner which would have warranted the denial of a real estate broker's license; that he was not truthful and therefore would have warranted the denial of a license.

In the trial court Buckley asserted that the commissioner was without jurisdiction as he, Buckley, was acting as an individual and not as a real estate broker; that the findings of the commissioner were not supported by the evidence and were not in conformity with the allegations in the accusation, and that the commissioner did not find upon all of the material issues; that as he was not acting as a broker, his conduct was not such as would have warranted the denial of an application for a license; that the decision did not comply with the requirements of section 11518 of the Government Code and that the commissioner abused his discretion by making his decision on the same day as the proposed decision of the hearing officer was made.

The trial court held against the appellant. Appellant asserts to this court substantially the same contentions as heretofore mentioned.

■ It seems clear that under section 10176 the misconduct referred to therein must arise in connection with the licensee's "performing or attempting to perform any of the acts within the scope of . . ." chapter 3 of the Real Estate Act. In other words, the misconduct of the person involved must be connected with his activity as a broker. (*Rattray* v. *Scudder*, 28 Cal.2d 214, 225-226 [169 P.2d 371, 164 A.L.R. 1356].) A real estate broker was defined in sections 10131 and 10134 of the Business and Professions Code.[2]

---

[2]Section 10131:

"A real estate broker within the meaning of this part is a person who, for a compensation, sells or offers for sale, buys, or offers to buy, lists, or solicits for prospective purchasers, or negotiates the purchase or sale or exchange of real estate, or who, for compensation, negotiates loans on real estate, leases, or offers to lease, or negotiates the sale, purchase, or exchange of leases, rents, or places for rent, or collects rent from real estate, or improvements thereon, for another or others."

Section 10134:

"One act, for a compensation of buying or selling real estate of or for another, or offering for another to buy or sell or exchange real estate, or negotiating the purchase or sale or exchange of, or listing or soliciting prospective purchasers of real estate, or negotiating a loan on or leasing or renting or placing for rent real estate, or collecting rent therefrom

In this case Buckley offered the property for sale, listed, solicited for prospective buyers and negotiated the sale of the property and he did these things for a compensation, for he negotiated the "less $1,650.00" in the transaction which just happens to equal 5 per cent of the sales price. The evidence shows that Buckley put up all of the money which was paid and there is no difference in the end so far as the seller is concerned, from paying a 5 per cent commission or in taking 5 per cent less for the property. As the trial court stated, "It would be novel for the law, because of the use of 'less' instead of commission, to hold that petitioner [Buckley] was (1) not enriched to that extent and (2) ceased to act as a broker and therefore was not amenable to disciplinary action."

Buckley decided to buy the property for himself while still acting as a broker for Mrs. Slusher. To do this he used Mrs. Chambreau, as a nominee, to take title and thereafter had Mrs. Chambreau deed the property to his (Buckley's) wife (using her maiden name) and then had the latter deed it to a corporation wholly owned by Buckley and his wife. Buckley did not disclose to Mrs. Slusher what he was doing under the circumstances and the failure to advise Mrs. Slusher constitutes misconduct because of which it was proper to revoke his license. As stated in *Rattray* v. *Scudder, supra,* 28 Cal.2d 214, 222-223:

" 'The law of California impose[s] on . . . the real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary. Violation of his trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee. (*King* v. *Wise,* 43 Cal. 628.)' (*Langford* v. *Thomas,* 200 Cal. 192, 196 [252 P. 602].) Such an agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. (Citations.)' "

A failure to disclose that a real estate agent is purchasing property is grounds for suspension or revocation of the real estate license of the agent. (*Abell* v. *Watson,* 155 Cal.App.2d 158 [317 P.2d 159]; *Estrin* v. *Watson,* 150 Cal. App.2d 107 [309 P.2d 506].)

Buckley asserts that he was not acting as a broker

constitutes the person making such offer, sale or purchase, exchange or lease, or negotiating the loan, or so renting or placing for rent or collecting the rent or listing or soliciting, a real estate broker or real estate salesman within the meaning of this part.' '

because he had no enforceable right to a commission and therefore the Real Estate Commissioner could not discipline him. The trial judge in his memorandum of decision stated:

"Petitioner appears to overlook the fact that although Civil Code section 1624 states that 'the following contracts are invalid, unless the same or some note or memorandum thereof, is in writing and subscribed by the party to be charged . . . ,' it is the rule that this statute of frauds applies to the remedy only and not to the validity of the contract; that the contract is not void but merely unenforceable (*Offeman* v. *Robertson-Cole Studios,* 80 Cal.App. 1 [251 P. 830]; *Warder* v. *Hutchison,* 69 Cal.App. 291 [231 P. 563]; *Durbin* v. *Hillman,* 50 Cal.App. 377 [195 P. 274]; *O'Brien* v. *O'Brien,* 197 Cal. 577 [241 P. 861]). The same has been held as to a real estate broker's contract. It was held in *Coulter* v. *Howard,* 203 Cal. 17, 21 [262 P. 751]: 'We agree fully with the language of *Muir* v. *Kane,* 55 Wash. 131 [104 P. 153, 26 L.R.A. N.S. 519, 19 Ann.Cas. 1180] as follows: ''The moral obligation to pay for services rendered as a broker in selling real estate under an oral contract, where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has been barred by the statute of limitations . . . There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing, not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries . . .'' ' The foregoing was again quoted with approval in *Estate of Rule,* 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319] and five other California appellate decisions were cited as supporting it.

"In other words, the oral agreement between Mrs. Slusher and petitioner was not invalid. It created the relationship of principal and agent and cast upon petitioner the duties owed by an agent and those owed by a real estate licensee. Petitioner, to subsequently collect a commission, did not have to obtain a contract setting out all the terms of the agreement, but merely 'a note or memorandum' (*Brewer* v. *Horst & Lachmund Co.,* 127 Cal. 643 [60 P. 418, 50 L.R.A. 240]; *Calhoun* v. *Downs,* 211 Cal. 766 [297 P. 548]; *Moore* v. *Borgfeldt,* 96 Cal.App. 306 [273 P. 1114]). Even a notation for his commission in subsequent escrow instructions would be sufficient to enable him to collect (*Coulter* v. *Howard,*

*supra*) or a subsequent writing (*Estate of Rule, supra*) ; for the performance of obtaining a buyer would be sufficient consideration for the agreement to pay. Even '$22,000 net. Brokers pay escrow fee' was held sufficient for a reformation to provide for the broker's commission (*Hillman* v. *Koch,* 92 Cal.App.2d 163 [206 P.2d 434]). Hence, the absence of Mrs. Slusher's signature bears on the enforceability of the portion of the agreement providing for the payment of a commission.

"Petitioner's argument also overlooks a keystone in the application of the statute of frauds namely, that the subscription required is that 'by the party to be charged' (Civ. Code, § 1624). The foregoing term as used in Civil Code, sections 1624, 1741 and the analogous language in sections 1971 and 1973 was exhaustively discussed in *Harper* v. *Goldschmidt,* 156 Cal. 245 [104 P. 451, 134 Am.St.Rep. 124, 28 L.R.A. N.S. 689], wherein it was held (p. 249) : 'Before the statute of frauds, an oral agreement could be proved against either party. The statute of frauds in no way interfered or attempted to interfere with the antecedent oral agreement, but, in effect, declared a rule of evidence that such agreement could not be *proved* unless the essentials of it had been reduced to writing and signed by the party to be charged.' As said in *Steel* v. *Duntley,* 115 Cal.App. 451 [1 P.2d 999] : 'The party to be charged is the only one who must sign . . . The statute of frauds does not require the signature of any party other than the one to be charged.'

"In the disciplinary proceeding respondent, petitioner herein, was the only one of the two parties to the oral agreement to be charged therewith and he was the one who set out and subscribed the terms of the oral agreement.

"As so often declared, the statute of frauds is designed to prevent fraud, not to shield it, whereas petitioner raises it in an endeavor to escape the consequences of his acts.

"Petitioner contends that under the holdings in *Schomig* v. *Keiser,* 189 Cal. 596 [209 P. 550], the commissioner cannot discipline him under section 10176 for his dealings with Mrs. Slusher. Whether the rule there announced under Statutes 1919, page 1256, section 12, the forerunner of section 10176, would be followed today, after certain other decisions, is speculative, but petitioner does not come within the rule there declared. In that case it was held that the Real Estate Commissioner could not revoke Schomig's license because the latter had retained $114 which a person had overpaid

in monthly instalments on a contract. The brief opinion stated the reason thus: 'there is no evidence that Schomig was employed for a compensation to do the acts complained of or that the acts themselves constituted a part of a contract for the sale of real estate. *The evidence shows that they were to be performed by Schomig without compensation, and that in doing so he was not fulfilling a contract for the sale of real estate* but was merely collecting the proceeds of a contract already made.'

"The evidence herein is directly opposite to the statement of the record just quoted. The letter from petitioner to Mrs. Slusher and her testimony before the hearing officer show conclusively that petitioner was performing his services for the standard five per cent commission. The record herein shows that even though petitioner or his wife was the undisclosed buyer of the realty, a sum equal to the five per cent commission was deducted. The written offer over the signature of his 'dummy' which petitioner submitted to Mrs. Slusher expressly provided for a 'purchase price of Thirty three thousand Dollars ($33,000.00)' made up of '$1,000.00 cash deposit herewith, . . . 9,000.00 additional cash into Escrow upon demand . . . 23,000.00 by the execution of a note secured by a first Trust Deed on this property . . . $33,000.00 TOTAL.' "

Appellant also asserts in effect that the relationship of Buckley and Mrs. Slusher must be determined solely from the instruments since there was no ambiguity in the documents and no extrinsic evidence was offered thereon. There is no merit to such a contention. The trial court very properly considered all of the other evidence which clearly establishes Buckley's misconduct.

Appellant also asserts that there was no finding by the trial court that he was acting as a licensee. ▉ Administrative proceedings are to be liberally construed. The fact that certain action was taken or a recommendation made raises the presumption that the existence of the necessary facts have been ascertained and found. (*Bailey* v. *County of Los Angeles,* 46 Cal.2d 132, 136 [293 P.2d 449] ; *Swars* v. *Council of the City of Vallejo,* 33 Cal.2d 867, 872-873 [206 P.2d 355] ; *Rudolph* v. *Athletic Commission,* 177 Cal.App.2d 1, 16, 17 [1 Cal.Rptr. 898].) Both the findings of respondent and the findings of the trial court contain findings of the underlying facts which lead unmistakably to the conclusion that Buckley was working for compensation.

The trial court also concluded that the respondent did not abuse his discretion thereby determining that the decision of the respondent was fully supported by the findings and that the findings were supported by the weight of the evidence. (Code. Civ. Proc., § 1094.5.)

Appellant claims that Mrs. Slusher listed the property with another broker and therefore he must not have been her agent. Mrs. Slusher denied having so listed the property with another broker but even had she so listed the property it would not necessarily benefit Buckley. ▌ The mere fact that a person has two or more agents on the sale of a parcel of property does not absolve any one agent of his fiduciary duties.

▌ In any event, it is clear that the commissioner was acting within his jurisdiction under the provisions of section 10177, subdivision (f), Business and Professions Code. Buckley was a licensee. All the commissioner had to determine was whether Buckley had conducted himself in a manner which would have warranted the denial of his application for a license. The respondent found on substantial evidence that Buckley was not truthful or honest which in and of itself is enough to deny an application for a license. As stated in the respondent's trial brief:

". . . From petitioner's conduct, it is also readily seen that petitioner does not understand the obligations between principal and agent, the principles of real estate practice and the canons of business ethics pertaining thereto, another ground for the denial of an application for a license. (See Bus. & Prof. Code, § 10153, subd. (c).) Or does not care to follow such obligations, principles and canons. Petitioner's emphasis on his theory that he was acting as an individual and not as a broker has little bearing on the question of jurisdiction to impose discipline under section 10177, subdivision (f). For it is well settled that this section allows disciplinary action against real estate brokers for their conduct in other fields of endeavor.

"See *Karrell* v. *Watson*, 116 Cal.App.2d 769, 775-776 [254 P.2d 651, 255 P.2d 464] (conviction of knowingly causing false certificates to be made to secure veteran benefits) ;

"*Bohn* v. *Watson*, 130 Cal.App.2d 24, 40 [278 P.2d 454]."

▌ Appellant also asserts that Mrs. Slusher suffered no detriment and therefore he should not be disciplined. One of the purposes of the Real Estate Act is to insure, as far as possible, that real estate brokers and salesmen will be honest,

truthful and of good reputation. (*Riley* v. *Chambers,* 181 Cal. 589, 593 [185 P. 855, 8 A.L.R. 418]. Bus. & Prof. Code, §§ 10150, 10152.) It was appropriately stated in 11 Opinions Attorney General 108, 110:

"A licensee who utters a substantial falsehood in connection with a real estate transaction is not to be insulated from the consequences of his dishonesty simply because the other party to the transaction suffers no pecuniary loss. Regardless of the lack of pecuniary damage occasioned by the falsehood, the licensee has demonstrated a lack of integrity. . . .

"It is of no significance that conduct justifying disciplinary action against the licensee might not justify an action for damages or rescission on the part of the aggrieved person. . . ." (*Marks* v. *Watson,* 112 Cal.App.2d 196, 200 [245 P.2d 1121]; see also *Slusher* v. *Buckley, supra,* 174 Cal.App.2d 324, 330.)

The next contention of appellant is that the commissioner acted improperly in adopting the proposed decision as his own on the same day on which the former was rendered. There is nothing before us to indicate that the commissioner did not read the transcript of the proceedings, even if such were required. But, in any event, when the proposed decision is adopted in its entirety or in whole except for a reduction in penalty, the agency need not have read or familiarized itself with the record. (*Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 393-399 [184 P.2d 323]; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593]; *National Automobile & Casualty Insurance Co.* v. *Industrial Accident Commission,* 34 Cal.2d 20, 30 [206 P.2d 841].)

There is no evidence before this Court to the effect that the commissioner "rubber stamped" the hearing officer's proposed decision. It is also apparent that the trial court exercised an independent judgment upon the whole matter.

Appellant's last contention is that the amendment of the accusation on the first day of the hearing and the refusal to grant a continuance in the matter deprived the appellant of a fair hearing. This contention was not made to the trial court. Issues not raised in the trial court will not ordinarily be considered on appeal. (*Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780]; *Estate of Cunningham,* 148 Cal.App.2d 8, 13 [305 P.2d 920]; *King* v. *Tilden Park Estates,* 156 Cal.App.2d 824, 832 [320 P.2d 109].)

The amendment in no way added new facts to the

existing ones, rather it simply set forth that by his conduct Buckley violated section 10176, subdivision (i) of the Business and Professions Code. No facts were introduced which were not already alleged in the accusation. Appellant had over two years within which to prepare for the hearing and the denial of the continuance was reasonable and proper.

We entertain no doubt that the respondent's decision and the judgment of the trial court should be upheld. (*Mast* v. *State Board of Optometry,* 139 Cal.App.2d 78, 91-93 [293 P.2d 148]; *Genser* v. *State Personnel Board,* 112 Cal.App.2d 77, 88-89 [245 P.2d 1090]; *Nelson* v. *Department Alcoholic Beverage Control,* 166 Cal.App.2d 783, 788 [333 P.2d 771]; *Rudolph* v. *Athletic Commission, supra,* 177 Cal.App.2d 1, 11, 12.)

The judgment is affirmed.

Lillie, J., and Scott (Robert H.), J. pro tem.,* concurred.

A petition for a rehearing was denied September 12, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 19, 1960. White, J., did not participate therein.

*Assigned by Chairman of Judicial Council.