[Civ. No. 33555. Second Dist., Div. Four. Dec. 16, 1969.]

FRANK HENRY WHITEHEAD, SR., Plaintiff and Respondent, v. MILTON G. GORDON, as Real Estate Commissioner, etc., Defendant and Appellant.

## COUNSEL

Thomas C. Lynch, Attorney General, and Robert M. Snader, Deputy Attorney General, for Defendant and Appellant.

David C. Marcus for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—This proceeding was brought in the superior court to review a decision of the Real Estate Commissioner revoking a real estate broker's license.

The findings of misconduct were in substance that on two occasions the

licensee had received a broker's commission on a probate sale while concealing from the court the fact that the ostensible purchaser was his brother-in-law, and the real purchaser was a corporation in which he had an interest; and on one occasion he had made a false representation in an application for financing. The superior court heard the matter upon the administrative record, without further evidence, and made findings of fact describing the transactions substantially as the commissioner had found them, but the court concluded that the commissioner had erred in assuming that the licensee owed any fiduciary duty to the sellers in those probate sales. The court therefore remanded the case to the commissioner for reconsideration of the penalty imposed. The commissioner has appealed from that judgment of the superior court.

The respondent licensee and others were charged by an accusation containing nine counts, but after the administrative hearing the commissioner found cause for discipline against the respondent licensee under counts VII and VIII only. The facts found by the superior court on those counts will be stated.

Count VII: The licensee, as broker, submitted the offer of Raymond Mestas to purchase property from the estate of Hornsby. Mestas is the licensee's brother-in-law. The sale to Mestas for $10,000 was confirmed by the probate court and the licensee received a $500 commission from the estate.

The licensee caused one escrow to be opened to complete the sale to Mestas, and a second escrow to transfer title from Mestas to Garfield Equities, Inc. for a stated price of $12,600. Garfield Equities then applied to a savings and loan association for an $8,000 loan on the property. The loan application, signed by the licensee, represented that $2,500 cash was to be paid by the purchaser as a down payment. This was untrue.

Fifty-one percent of the stock of Garfield Equities, Inc. was owned by the licensee and his wife, and the other 49 percent was owned by the licensee's son. The licensee has always been its president. The licensee did not disclose to any representative of the Hornsby estate, or to the probate court, either that Mestas was his brother-in-law or that the real purchaser was Garfield Equities, Inc.

Count VIII: The licensee submitted the offer of Mestas to purchase property from the Heath estate. The sale to Mestas was confirmed by the probate court at a price of $8,200, and the licensee received from the estate a commission of $410. Through a double escrow, title was conveyed to the licensee's son Frank Whitehead, Jr. The check which Mestas received for

the second transfer was deposited to the account of Whitehead Land Company, a corporation in which the licensee was a shareholder.[1]

The licensee did not disclose to any representative of the Heath estate that Mestas was his brother-in-law or that the property was to be conveyed to the licensee's son, or that he had any interest in the transaction except as broker.

The commissioner concluded that the facts found under each count constituted cause for discipline under Business and Professions Code section 10176, subdivisions (a), (d), (g) and (i), and section 10177, subdivisions (f) and (j).[2]

The memorandum written by the superior court judge pointed out that the evidence adequately supported the finding that the licensee had attempted to deceive the lender, and that the licensee had used a subterfuge in his dealing with the two estates; but the court concluded that this was "unnecessary deception" because he was acting only as a middleman and owed no fiduciary duty to the seller. Since, in that court's view, the licensee was being disciplined, at least in part, for breach of a nonexistent duty, the court remanded the case to the commissioner for a reconsideration of the penalty.

Subsequent to the trial of this action the Supreme Court handed down its decision in *Batson* v. *Strehlow* (1968) 68 Cal.2d 662 [68 Cal.Rptr. 589, 441 P.2d 101]. That was an action to recover from a broker the commission which the probate court had allowed him in a judicially confirmed sale of

---

[1]This finding is inaccurate and incomplete in a material, though not critical, respect. The evidence shows without contradiction that Whitehead Land Company is a corporation which never issued any stock, but which, according to the licensee's testimony, was wholly owned by the licensee and his wife. The $7,414 which Mestas deposited in escrow to purchase the Heath estate property came from the bank account of the Whitehead Land Company. When Mestas conveyed to Frank Whitehead, Jr., the escrow holder's check payable to Mestas in the amount of $7,904.38 was deposited in the Whitehead Land Company account. The $410 commission received by the licensee was also deposited in that bank account.

[2]Business and Professions Code section 10176: "The commissioner may . . . temporarily suspend or permanently revoke a real estate license at any time where the licensee . . . has been guilty of any of the following:

(a) Making any substantial misrepresentation. . . .

(d) Acting for more than one party in a transaction without the knowledge or consent of all parties thereto. . . .

(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit. . . .

(i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

Section 10177 lists, as additional grounds of discipline, conduct which would have warranted the denial of an application for a license (subd. (f)), and "Any other conduct . . . which constitutes fraud or dishonest dealing." (Subd. (j).)

real property by a guardian. The evidence showed that the ostensible purchaser was a corporation, all of whose stock was owned by the broker and his wife, and which was actually a conduit for the transfer of the property to a partnership, of which the broker was a member. In affirming a judgment against the broker, the Supreme Court rejected his contention that he was a mere "middleman" or "finder" who owed no duty to the seller. The court pointed out that, under the Probate Code, there is no provision for compensating a finder. Compensation could have been paid to the defendant only in his capacity as a bona fide agent or broker. When the defendant undertook to act as such an agent the law imposed upon him the same obligation of undivided service and loyalty that is imposed on a trustee in favor of his beneficiary. The Supreme Court said (at p. 676): "It is manifest that defendant violated his fiduciary duties as a real estate agent by failing to fully disclose all of the material facts of the transaction and by becoming 'an undisclosed purchaser of his principals' property.' . . .

"This case is a classic example of the situation which, for public policy reasons, the law seeks to avoid by placing restrictions on one acting in a dual capacity."

 The provisions of the Probate Code for the employment and compensation of brokers are the same for decedents' estates as for guardianship estates. (Prob. Code, § 1534.) The reasoning of the *Batson* case, *supra,* leaves no doubt that the licensee here was a fiduciary, who had a duty to disclose to the personal representative and the court his interest in the transaction. The failure of a broker to disclose to the seller that he is purchasing the property is ground for discipline. (*Buckley* v. *Savage* (1960) 184 Cal.App.2d 18 [7 Cal.Rptr. 328] (revocation); *Abell* v. *Watson* (1957) 155 Cal.App.2d 158 [317 P.2d 159] (suspension); *Estrin* v. *Watson* (1957) 150 Cal.App.2d 107 [309 P.2d 506] (suspension).)

The licensee is in no position to claim that the applicable law was unclear at the time of the transactions, or that he is being disciplined under a new theory first discovered by the courts after the fact. He was indisputably aware of the general rule that a broker has a fiduciary obligation. His understanding that this duty applied to these transactions is attested by the special procedures he adopted to conceal the identity of the real purchasers.

We do not regard the opinion in *Batson* v. *Strehlow, supra,* as making a change in the law. What happened is that on May 12, 1967, while the instant proceeding was pending in the superior court, the Court of Appeal decision in *Batson* v. *Strehlow* (Cal.App.) 59 Cal.Rptr. 195, was filed,

holding, by a divided vote, that probate sales constituted an exception to the general rule relating to the duties of real estate brokers. In the instant case the trial court was persuaded to adopt that theory. The subsequent decision of the Supreme Court established that there was no such exception.

It bears emphasis that the superior court in this case did not make any findings of fact contrary to the findings of the commissioner as to what respondent did. Although the superior court's judgment declares "that the [commissioner's] findings are not supported by the evidence," this meant only that the trial court found no proof that respondent was acting as a fiduciary—a view based upon that court's theory of the law. The findings of the superior court affirmatively establish the facts which made respondent a fiduciary under our view of the law.

 The opinion of the superior court judge in this case contains this significant observation: "At the time of the transactions, the petitioner's [respondent's] furtive attempts at concealment show that he then misconceived the correct state of the law. He seems to have thought it necessary to disguise the fact he was buying the properties for his own account."

It now appears that respondent's understanding of the law was better than his sense of duty.

Respondent contends that the evidence in the record of the administrative hearing is insufficient to support the findings. Specifically, he argues that there was no rule of court, statute or regulation requiring disclosure of his relationship with the purchasers; and that the probate court made no inquiry of him concerning the purchasers. Business and Professions Code section 10176, subdivision (d), is in point, as well as the general law regarding the duties of a fiduciary. The duty was upon the broker to disclose, and the lack of a specific inquiry does not excuse him.

Respondent also argues that there is no finding that Mestas did not receive consideration in lieu of the $2,500, which had been falsely stated to be the down payment, and respondent points out that there is no finding that Garfield Equities, Inc. was his *alter ego*. But guilt does not turn upon legal forms. The representation to the loan company that there had been a $2,500 down payment was one which was intended to have a particular meaning to a prospective lender, and in that sense the representation was false. Garfield Equities, Inc. was not necessarily respondent's *alter ego*, but his relationship to it was such as to create a duty to disclose the fact to the seller, as respondent obviously understood when he went to some pains to avoid disclosure.

The judgment is reversed with directions to make appropriate revisions in the conclusions of law and enter judgment denying the writ.

Kingsley, J., and Dunn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 25, 1970. Peters, J., was of the opinion that the petition should be granted.